UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

HALINA HACZYNSKA and MARGARET
WIELKOPOLAN,

                Plaintiffs,

        v.

MOUNT SINAI HEALTH SYSTEM, INC., THE
MOUNT SINAI HOSPITAL, ICAHN INSTITUTE
OF MEDICAL RESEARCH AT MOUNT SINAI
LLC, JANE MAKSOUD, MARCIA MESECK,
SHARON MIAS, KATHLEEN HOCHUL, *in her
official capacity as Governor of the State of New
York*, JAMES V. MCDONALD, *in his official
capacity as Acting Commissioner of the New York
Department of Health*, and JOHN DOES 1–20,

                Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
23-CV-3091 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiffs Dr. Halina Haczynska ("Dr. Haczynska") and Margaret Wielkopolan

("Wielkopolan") commenced the above-captioned action on April 24, 2023, against Defendants

Kathleen Hochul, in her official capacity as Governor of the State of New York; James V.

McDonald, in his official capacity as Commissioner[1] of the New York Department of Health

(together, "State Defendants"); Mount Sinai Health System, Inc. ("MSHS"); the Mount Sinai

Hospital; Icahn Institute of Medical Research at Mount Sinai LLC; Jane Maksoud; Marcia

Meseck; Sharon Mias; and John Does 1–20 (together, "Mount Sinai Defendants").  (Compl.,

---

[1]  When Plaintiffs filed their Amended Complaint in this case, McDonald was serving as
the Acting Commissioner of the New York Department of Health.  On June 9, 2023, he was
confirmed as Commissioner.  *James V. McDonald M.D., M.P.H.*, N.Y. State Dep't of Health,
https://www.health.ny.gov/commissioner/bio (last updated May 2024).

Docket Entry No. 1.)  On the same day, Plaintiffs filed an Amended Complaint.  (Am. Compl., Docket Entry No. 2.)  Plaintiffs bring claims under 42 U.S.C. § 1983 against State Defendants, alleging violations of (1) their rights under the Free Exercise Clause of the First Amendment, (2) the Establishment Clause of the First Amendment, and (3) their rights to procedural due process under the Fourteenth Amendment.  (*Id.* ¶¶ 167–169, 174–187.)  Plaintiffs also bring claims against Mount Sinai Defendants for religious discrimination based on failure to accommodate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Administrative Code, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").[2]  (*Id.* ¶¶ 139–166.)  Plaintiffs are both former employees of MSHS, and brought this action based on State Defendants' regulation mandating that healthcare facilities require COVID-19 vaccinations for certain workers, and on Mount Sinai Defendants' actions in complying with that regulation.

State Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiffs

---

[2]  In their Amended Complaint, Plaintiffs also brought their section 1983 claims against Mount Sinai Defendants, alleging that they were state actors, but Plaintiffs now withdraw these claims against Mount Sinai Defendants.  (Pls.' Mem. in Opp'n to Mount Sinai Defs.' Mot. to Dismiss ("Pls.' MS Opp'n") 21 n.5, Docket Entry No. 46.)  In addition, Plaintiffs brought claims against all Defendants (1) alleging a violation of the Equal Protection Clause of the Fourteenth Amendment and (2) seeking a judgment declaring that the emergency authorization of COVID-19 vaccines and Defendants' resulting vaccine requirements violated Plaintiffs' rights under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, but Plaintiffs now withdraw both claims in their entirety.  (*Id.*; Pls.' Mem. in Opp'n to State Defs.' Mot. to Dismiss ("Pls.' State Opp'n") 6 n.3, Docket Entry No. 49.)

oppose the motion.[3]  Mount Sinai Defendants separately move to dismiss the Amended

Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, and Plaintiffs oppose the motion.[4]  For the reasons set forth below, the Court grants

Defendants' motions.

## I. Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the

purpose of deciding Defendants' motions.  The Court also considers documents incorporated by

reference in the Amended Complaint and takes judicial notice of relevant state laws, state

regulations, state case law, and public documents that are not subject to dispute.[5]  *See* Fed. R.

---

[3]  (State Defs.' Mot. to Dismiss ("State Mot."), Docket Entry No. 48; State Defs.' Mem. in Supp. of State Mot. ("State Mem."), Docket Entry No. 48-1; State Defs.' Reply in Supp. of State Mot. ("State Reply"), Docket Entry No. 48-9; Pls.' State Opp'n.)

[4]  (Mount Sinai Defs.' Mot. to Dismiss ("MS Mot."), Docket Entry No. 43; Mount Sinai Defs.' Mem. in Supp. of MS Mot. ("MS Mem."), Docket Entry No. 44; Mount Sinai Reply in Supp. of MS Mot. ("MS Reply"), Docket Entry No. 45; Pls.' MS Opp'n.)

[5]  In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see also Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (citing *Pani*, 152 F.3d at 75); *Sahni v. Staff Att'ys Ass'n*, No. 14-CV-9873, 2016 WL 1241524, at *5 (S.D.N.Y. Mar. 23, 2016) ("Courts in this District [have] routinely take[n] judicial notice of state administrative records."); *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 206 (S.D.N.Y. 2015) (noting that "when a court takes judicial notice of documents in the public record at the [m]otion [t]o [d]ismiss stage," it may consider them "only to establish their existence and legal effect[] or to determine what statements they contained [but] not for the truth of the matters asserted" (quoting *Liang v. City of New York*, No. 10-CV-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013))).  The Court may also take judicial notice of "documents retrieved from official government websites." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting examples).

Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (stating that "relevant matters of public record" are susceptible to judicial notice).

### a.   Section 2.61

In August of 2021, the COVID-19 pandemic was "surging in New York, with daily positive cases up over 1000% over the course of six weeks." *Does 1–2 v. Hochul*, 632 F. Supp. 3d 120, 128 (E.D.N.Y. 2022) (internal citation omitted); *see also id.* at 127 n.1 (collecting cases noting that "the [c]ourt may take judicial notice of facts regarding COVID-19"). The New York Department of Health ("DOH"), tasked with regulating "the sanitary aspects of . . . businesses and activities affecting public health," N.Y. Pub. Health Law ("PHL") § 201(1)(m), acted pursuant to this mandate to respond to the "rapidly increasing infection rates related to the Delta variant" of the COVID-19 virus. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272 (2d Cir.) (per curiam) (*We the Patriots I*), *clarified*, 17 F.4th 368 (2d Cir. 2021) (*We the Patriots II*), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022). On August 18, 2021, the DOH Commissioner issued an "Order for Summary Action" pursuant to his authority under PHL § 16, which authorizes the issuance of a short-term order if he identifies a condition that he deems a "danger to the health of the people." *We the Patriots I*, 17 F.4th at 275; (*see also* Am. Compl. ¶ 45; Order for Summary Action, annexed to Boller Decl. as Ex. A, Docket Entry No. 48-3).

---

The Court accordingly considers state laws, state regulations, state case law, and official public records to the extent Plaintiffs rely on them in their Amended Complaint. This includes the rule Plaintiffs challenge — Section 2.61, which required covered healthcare facilities to ensure that staff were vaccinated against COVID-19, 10 N.Y.C.R.R. § 2.61 (Aug. 26, 2021) — and its legislative history. Further, to the extent that the Court relies on exhibits filed with State Defendants' motion to dismiss, the Court notes that they are all documents of public record available on government websites, and Plaintiffs do not oppose their consideration. (*See* Decl. of Rosemary B. Boller ("Boller Decl.") ¶¶ 2–7, Docket Entry No. 48-2.)

The Order for Summary Action required certain healthcare facilities to "continuously require all covered personnel to be fully vaccinated against COVID-19." (Am. Compl. ¶ 45; Order for Summary Action 6); *see also We the Patriots I*, 17 F.4th at 274–75. The rule allowed for two exemptions to its vaccination requirement — a medical exemption, as well as a religious exemption. The religious exemption provided:

> Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer.

(Am. Compl. ¶ 45; Order for Summary Action 6–7.)

Later that month, on August 26, 2021, the DOH published Section 2.61, the emergency rule at issue in this case, superseding the Order for Summary Action. *We the Patriots I*, 17 F.4th at 274–75; (Am. Compl. ¶ 55). Section 2.61 directed hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to "continuously require" certain employees to be fully vaccinated against COVID-19 beginning on September 27, 2021, for "general hospitals" and nursing homes, and on October 7, 2021, for all other "covered entities" as defined in the Rule. 10 N.Y.C.R.R. § 2.61(c) (Aug. 26, 2021) ("Section 2.61");[6] *see also We the Patriots I*, 17 F.4th at 274–75. Section 2.61 applied only to those employees covered by the Rule's definition of "personnel," namely, those employees, staff members, and volunteers "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." Section 2.61(a)(2); *We the Patriots I*, 17 F.4th at 274. Although Section 2.61 was similar to the Order for Summary Action,

---

[6] Citations to Section 2.61 throughout this decision are to the version in effect at the time of the relevant events in this case, as published in the New York State Register. 43 N.Y. Reg. 6–7 (Sept. 15, 2021); (*see also* Section 2.61, annexed to Boller Decl. as Ex. B, Docket Entry No. 48-4).

it differed in two key respects.  First, as an emergency rule, Section 2.61 could stay in effect for a maximum of ninety days as opposed to fifteen days, subject to extensions.  *We the Patriots I*, 17 F.4th at 274 (citing N.Y. A.P.A. Law § 202(6)(b)).  Second, Section 2.61 eliminated the religious exemption included in the original Order for Summary Action.  *Id.*; (Am. Compl. ¶¶ 55–56).

On November 24, 2021, the DOH issued a notice of proposed rulemaking to permanently adopt Section 2.61 and its COVID-19 vaccination mandate for covered healthcare facilities.  *See* 43 N.Y. Reg. 4–8 (Dec. 15, 2021).  The permanent rule went into effect on June 22, 2022, in a form substantively the same as Section 2.61.  *See* 44 N.Y. Reg. 10 (June 22, 2022).

In May of 2023, following the federal government's decision to end its vaccination requirements for healthcare facilities certified by the Centers for Medicare and Medicaid Services, the DOH announced that Section 2.61 "is being recommended for repeal by the [DOH]," and that "[e]ffective immediately, the [DOH] will cease citing providers for failing to comply with the requirements of 10 NYCRR Section 2.61 while the repeal is under consideration."[7]  Following a notice and comment period, Section 2.61 was repealed effective October 4, 2023.[8]  45 N.Y. Reg. 22 (Oct. 4, 2023).

---

[7]  Letter from Eugene P. Heslin, First Deputy Comm'r & Chief Med. Off., N.Y. Dep't of Health, to Healthcare Administrators ("Heslin Letter") (May 24, 2023), https://coronavirus.health.ny.gov/system/files/documents/2023/05/healthcare-worker-vaccine-mandate-guidance.pdf; (*see also* Heslin Letter, annexed to Boller Decl. as Ex. C, Docket Entry No. 48-5).

[8]  "[A]s a fundamental matter, courts may take judicial notice of legislative history."  *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) (citing *Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959)).  The Court takes judicial notice of the fact that New York's Department of State adopted and published DOH's call to repeal Section 2.61 in the New York State Register, thus repealing it effective October 4, 2023.  45 N.Y. Reg. 22 (Oct. 4, 2023).

### b.   Dr. Haczynska's employment with MSHS

Dr. Haczynska was employed by MSHS in the Icahn School of Medicine at Mount Sinai for over eighteen years.  (Am. Compl. ¶ 23.)  At the time of her termination, she was employed as a Quality Monitor Analyst at the Vaccine and Cell Therapy Laboratory ("VCTL"), where Meseck was her immediate supervisor.  (*Id.* ¶¶ 15, 24.)  Her duties were primarily "administrative and involved paperwork and audits."  (*Id.* ¶ 25.)  She performed her role in a lab environment, which did not involve patient care or contact.  (*Id.*)  As a devout Roman Catholic, Dr. Haczynska will not accept any vaccine that "conflicts with her sincere moral and religious beliefs."  (*Id.* ¶ 20.)

On June 14, 2021, MSHS informed all employees that it was considering a COVID-19 vaccine mandate, noting that any policy put into place would take into account "medical or religious reasons why [some employees] cannot get vaccinated."  (*Id.* ¶ 33.)  Starting on July 21, 2021, Meseck began pressuring Dr. Haczynska to receive the COVID-19 vaccine, which was not mandated by New York State or MSHS at the time, and Dr. Haczynska refused.  (*Id.* ¶¶ 35–36.)  On August 12, 2021, MSHS imposed a mandatory COVID-19 vaccination policy on all faculty and staff, with limited exceptions for religious and medical reasons.  (*Id.* ¶ 41.)  The new policy required all employees to obtain their first shot by September 13, 2021, and further provided that those who did not receive it by then must obtain a religious or medical exemption or be subject to discipline that could include termination.  (*Id.*)  A few days later, on August 18, 2021, MSHS provided all employees with a link to submit requests for religious exemptions.  (*Id.* ¶ 47.)  On the same day, the Order for Summary Action, described above, went into effect.  (*Id.* ¶ 45.)  Like MSHS's policy, the Order for Summary Action included an exemption for medical and religious reasons.  (*Id.* ¶¶ 41, 45.)

7

On August 21, 2021, Dr. Haczynska submitted a request for a religious exemption through the link provided by MSHS.  (*Id.* ¶ 48.)  In support of her exemption request, she cited her strong religious beliefs as a Roman Catholic and asserted that the vaccines went against her sincerely held religious beliefs because they were produced using fetal cell lines derived from aborted fetuses.  (*Id.* ¶¶ 48–50, 52.)  Dr. Haczynska also submitted two letters written by religious leaders supporting her view that a Roman Catholic can refuse a vaccine if required to do so by her conscience.  (*Id.* ¶¶ 49–50.)  Dr. Haczynska was willing to change her work schedule to lessen interaction with others or to take other "reasonable" steps to allow for a religious exemption or accommodation, and she regularly tested for exposure to COVID-19.  (*Id.* ¶¶ 26–27.)

On August 26, 2021, Dr. Haczynska received confirmation that her request for a religious exemption had been received and was under review.  (*Id.* ¶ 54.)  The same day, the DOH published Section 2.61, which eliminated the religious exemption included in the earlier Order for Summary Action.  (*Id.* ¶ 55.)  The next day, MSHS informed employees that religious exemptions from its mandatory COVID-19 vaccine policy would no longer be allowed, citing Section 2.61's application to MSHS and its employees.  (*Id.* ¶ 64.)  MSHS directed all employees who had previously sought a religious exemption to receive their first vaccine dose by September 13, 2021, an earlier date than required by Section 2.61.  (*Id.*; Section 2.61(c).)  MSHS explained that failure to receive the vaccine would cause the employee to "be placed into immediate job jeopardy and . . . terminated shortly thereafter."  (Am. Compl. ¶ 64.)  On August 30, 2021, Dr. Haczynska was told directly that MSHS could not grant her religious exemption request because Section 2.61 made such exemptions impermissible for employees of healthcare organizations like MSHS.  (*Id.* ¶ 65.)  On September 1, 2021, Mias, the Executive Administrator

8

of MSHS, informed Dr. Haczynska and others copied on an email that Dr. Haczynska appeared as "not vaccinated" on the "employee vaccination report" and reiterated the September 13, 2021 deadline.  (*Id.* ¶¶ 16, 68.)  When Dr. Haczynska continued to refuse the vaccine, she was placed on unpaid leave on September 15, 2021, with termination to be effective September 27, 2021. (*Id.* ¶ 73.)

On September 15, 2021, MSHS notified employees of a decision from the United States District Court for the Northern District of New York issuing a statewide temporary restraining order ("TRO") enjoining enforcement of Section 2.61 that could potentially lead to the availability of religious exemptions.  (*Id.* ¶ 74); *see Dr. A. v. Hochul*, No. 21-CV-1009, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021).  Dr. Haczynska returned to work on September 27, 2021, and on October 18, 2021, she received an email from the committee in charge of reviewing exemption requests, informing her that it had begun releasing exemption decisions and was requesting more information as needed.  (Am. Compl. ¶¶ 77–78.)  Dr. Haczynska was not asked for more information, but on November 19, 2021, she was told that her request had been denied on the basis that she "did not sufficiently establish a sincerely held religious or moral belief that is contrary to the practice of immunization or the COVID-19 vaccine."  (*Id.* ¶¶ 78–79 (emphasis omitted).)  Dr. Haczynska received an email on November 24, 2021, informing her that if her request had been denied, then she must "follow the protocol."  (*Id.* ¶ 83.)  MSHS denied her appeal of the decision, and on December 7, 2021, MSHS formally terminated Dr. Haczynska's employment.  (*Id.* ¶¶ 81, 87–89.)  Following a formal complaint of religious discrimination filed with the U.S. Equal Employment Opportunity Commission (the "EEOC"), Dr. Haczynska was notified of her right to sue on January 26, 2022.  (*Id.* ¶¶ 85, 90.)

### c. **Wielkopolan's employment with MSHS**

Wielkopolan was an Administrative Assistant at MSHS whose duties and responsibilities did not involve providing direct medical care to patients. (*Id.* ¶¶ 1, 94.) She regularly tested for exposure to COVID-19 and wore all required personal protective equipment while performing her duties at MSHS. (*Id.* ¶¶ 93.) As a devout Roman Catholic, Wielkopolan refuses any vaccine that conflicts with her sincere moral and religious beliefs. (*Id.* ¶¶ 91.)

Wielkopolan submitted a request for a religious exemption from MSHS's COVID-19 vaccination requirement on August 15, 2021. (*Id.* ¶ 95.) In her request, she explained that she could not take the COVID-19 vaccine because of its "link to abortion," and that accepting it "would be a desecration of her body as a temple of God." (*Id.* ¶ 96.) On October 27, 2021, Wielkopolan received an email from the reviewing committee with further questions, including some regarding "her past and future use of over-the-counter medications." (*Id.* ¶ 97.) Wielkopolan objected to the questions as a violation of Title VII. (*Id.*)

On November 19, 2021, MSHS sent Wielkopolan an email informing her that while her request was still under review, MSHS could no longer have employees with approved exemptions or employees awaiting decisions to work on site. (*Id.* ¶ 98.) She was told that she needed to remain off site starting on November 23, 2021. (*Id.*) Her request was eventually denied on December 15, 2021, on the basis that she "did not sufficiently establish a sincerely held religious or moral belief that is contrary to the practice of immunization or the COVID-19 vaccine." (*Id.* ¶ 99 (emphasis omitted).) Following two appeals of the decision, Wielkopolan was informed that the denial was final, and she was directed to remain off site using paid time off or unpaid leave until January 21, 2022, after which MSHS would begin the termination process if Wielkopolan was still not vaccinated. (*Id.* ¶¶ 101, 103–104.) She never received a

formal termination letter from MSHS.  (*Id.* ¶ 106.)  Wielkopolan filed a formal complaint for religious discrimination and received a letter notifying her of her right to sue from the EEOC on January 31, 2023.  (*Id.* ¶¶ 107–108.)

Although both Dr. Haczynska and Wielkopolan had their religious exemption requests denied, MSHS granted the exemption request of Dr. Haczynska's coworker in the VCTL, Joanna Grabowska ("Grabowska").  (*Id.* ¶¶ 51, 105.)  Plaintiffs contend that Grabowska submitted with her exemption request the same two letters from religious leaders that Dr. Haczynska relied on in her exemption request.  (*Id.* ¶ 51.)

## II.  Discussion

### a.  Standards of review

#### i.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting

*APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010).  Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) ("[T]he party asserting subject matter jurisdiction must demonstrate its existence by a preponderance of the evidence." (citing *Morrison*, 547 F.3d at 170)); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii.   Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (discussing Rule 12(b)(6) (quoting *Matson*, 631 F.3d at 63)); *Cavello Bay Reinsurance Ltd. v.*

*Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all

allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal

conclusions."  *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations

contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

      **b.  The Court lacks subject matter jurisdiction over Plaintiffs' claims against State Defendants**

State Defendants contend that the Court should dismiss all of Plaintiffs' claims against

them for lack of subject matter jurisdiction.  (State Mem. 12–18.)  In support, State Defendants

argue that the claims for injunctive relief have been rendered moot by the repeal of Section 2.61,

and that the claims for monetary relief are barred by Eleventh Amendment sovereign immunity.

(*Id.*)

Plaintiffs oppose dismissal, arguing that the Court has subject matter jurisdiction and that

the Court should address the merits of their claims against State Defendants.  (Pls.' State Opp'n

15–18, 21–23.)

      **i.  Plaintiffs' claims against State Defendants for injunctive relief are moot**

State Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs'

claims for injunctive relief.  (State Mem. 12–17.)  In support, they argue that those claims were

rendered moot as early as May 24, 2023, when the DOH announced that it would not cite

facilities for new violations of Section 2.61, *see* Heslin Letter, and that they certainly became

moot following the repeal of Section 2.61 on October 4, 2023.  (*Id.* at 13–15.)  State Defendants

contend that "there is no longer any effective, prospective remedy that the Court could grant

Plaintiffs as against State Defendants," because "there is no possible ongoing violation of federal

law by State Defendants for the Court to enjoin." (*Id.* at 14.)  In addition, State Defendants argue

that no exception to the mootness doctrine applies.  (*Id.* at 15–17.)  First, they argue that the

exception for voluntary cessation of unlawful conduct is inapplicable because there is no

evidence that State Defendants "intend[] to reinstate the challenged statute after the litigation is

dismissed."  (*Id.* at 15 (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77,

91 (2d Cir. 2005)).)  They contend that the change in DOH policy coincided with "the changed

circumstances surrounding COVID-19 and federal vaccination recommendations," and that

consequently, it is "merely speculative" that State Defendants would enforce a rule like Section

2.61 again.  (*Id.* at 15–16; *see also* State Reply 4–6.)  Second, State Defendants argue that the

exception for disputes that are capable of repetition yet likely to evade review also does not

apply.  (State Mem. 16.)  In support, they contend that the history of litigation surrounding

Section 2.61 "illustrates that its duration is not too short to allow for full litigation," and also that

Plaintiffs do not "have a reasonable expectation that they will be subject to the same action again

in the future — particularly given the changed circumstances surrounding COVID-19."  (*Id.* at

16–17.)  Finally, State Defendants argue that any relief that Plaintiffs seek in the form of

"reinstatement or similar relief against their former employer are irrelevant to the lack of

viability of their claims against State Defendants."  (State Reply 4.)

      Plaintiffs argue that their claims for injunctive relief are not moot, and that "the present

case does present a possibility for prospective injunctive relief."  (Pls.' State Opp'n 17 (emphasis

omitted).)  Specifically, Plaintiffs assert that the voluntary cessation exception to the mootness

doctrine applies to the facts of this case, and that the Court can therefore grant prospective

injunctive relief.  (*Id.* at 15–17.)  In support, they argue that State Defendants attempted to moot

their own appeal after Section 2.61 was "declared to be illegal" by the New York Supreme

Court, Onondaga County, in *Medical Professionals for Informed Consent v. Bassett*, 185

N.Y.S.3d 578 (Sup. Ct. 2023).  (Pls.' State Opp'n 5, 15.)  Plaintiffs contend that State

Defendants declined to appeal the state court's ruling and rescinded Section 2.61 to "save face,"

and "to avoid review and the liabilities for their acts."  (*Id.* at 15.)  Further, Plaintiffs argue that,

notwithstanding State Defendants' decision to rescind Section 2.61, State Defendants still caused

Plaintiffs to lose their jobs "in whole or in part because the illegal regulation was on the books

and the [Mount] Sinai [D]efendants utilized [Section 2.61] as a basis for denying religious

exemptions to [Plaintiffs] and terminating their employment."  (*Id.* at 17.)  Plaintiffs contend that

the Court can therefore order prospective injunctive relief by declaring Section 2.61 illegal "as it

must in light of the collateral estoppel doctrine" and ordering "reinstatement of [Plaintiffs] due to

such illegal regulation being in effect and causing termination."  (*Id.* at 17–18.)

     "Because [federal court] jurisdiction is constitutionally limited to 'actual, ongoing cases

or controversies,' a party must at all stages have 'an actual injury . . . likely to be redressed by a

favorable judicial decision.'"  *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022)

(quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  "The mootness doctrine, which

is mandated by the 'case or controversy' requirement in Article III of the United States

Constitution, requires that federal courts may not adjudicate matters that no longer present an

actual dispute between parties."  *Catanzano v. Wang,* 277 F.3d 99, 107 (2d. Cir. 2001) (citing

*Lewis,* 494 U.S. at 477–78); *see also Fed. Bureau of Investigations v. Fikre*, 601 U.S. 234, 240–

41 (2024) ("Sometimes, events in the world overtake those in the courtroom, and a complaining

party manages to secure outside of litigation all the relief he might have won in it.  When that

happens, a federal court must dismiss the case as moot.").  Federal courts may "resolve only 'real

and substantial controversies admitting of specific relief,'" and may not "issue decisions

15

'advising what the law would be upon a hypothetical state of facts.'" *Exxon*, 28 F.4th at 392 (quoting *Lewis*, 494 U.S. at 477–78; *see also Marciano v. Adams*, No. 22-570, 2023 WL 3477119, at *1 (2d Cir. May 16, 2023) ("Typically, no live controversy remains where a party has obtained all the relief she could receive on the claim through further litigation." (quoting *Ruesch v. Comm'r of Internal Revenue*, 25 F.4th 67, 70 (2d Cir. 2022)); *Saba v. Cuomo*, 535 F. Supp. 3d 282, 292 (S.D.N.Y. 2021) ("A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012))).   "This inquiry is more complicated in cases involving states or state agents as defendants . . . since the Eleventh Amendment bars the award of money damages against state officials in their official capacities," and "pursuant to the doctrine first articulated in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring claims against a state official acting in her official capacity only if he alleges 'an ongoing violation of federal law and seeks [injunctive] relief properly characterized as prospective.'" *Exxon*, 28 F.4th at 392 (first citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–03 (1984); and then quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Because of the repeal of Section 2.61, Plaintiffs' claims for injunctive relief against State Defendants are moot since the Court can no longer fashion any form of meaningful injunctive relief.  *See Exxon*, 28 F.4th at 392 ("A live controversy remains as long as 'a court can fashion *some* form of meaningful relief' to award the complaining party, and even '[t]he availability of [a] *possible* remedy is sufficient to prevent [a] case from being moot." (alterations in original) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12–13 (1992))).  When the parties filed their respective briefs, the DOH had already recommended Section 2.61's repeal on May 24, 2023, and clearly stated it would cease enforcing the rule.  *See* Heslin Letter.  The repeal

eventually went into effect on October 4, 2023.  45 N.Y. Reg. 22 (Oct. 4, 2023).  Accordingly,

the Court cannot grant Plaintiffs the requested injunctive relief with respect to Section 2.61

because the alleged violation of federal law is no longer ongoing.[9]  *See Exxon*, 28 F.4th at 393

("Put simply, the [c]ourt cannot enjoin what no longer exists."); *Tandian v. State Univ. of N.Y.*,

--- F. Supp. 3d ---, ---, 2023 WL 8827577, at *3 (N.D.N.Y. Oct. 13, 2023) ("[A]s a result of

Section 2.61's repeal, the [c]ourt can no longer provide [p]laintiff any of her requested relief.

The [c]ourt therefore finds that [p]laintiff's claims against the [e]xecutive [d]efendants are

moot.").

Moreover, the voluntary cessation exception to the mootness doctrine does not apply to

Plaintiffs' claims for injunctive relief.  Typically, a defendant's "'voluntary cessation of

allegedly illegal conduct' is not enough to render a case moot." *Exxon*, 28 F.4th at 395 (quoting

*United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).  If it were otherwise, "a defendant

might 'strategically alter its conduct in order to prevent or undo a ruling adverse to its interest.'"

*Id.* (quoting *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006)).

However, "where 'there is no reasonable expectation' of the alleged violation's recurrence, and

interim events have 'completely and irrevocably eradicated the effects of the alleged violation,'"

a case will still be moot. *Id.* (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631

(1979)).  When a defendant claims that its voluntary cessation or compliance moots a case, the

defendant "bears the formidable burden of showing that it is absolutely clear the allegedly

wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.,* 568

---

[9]  Plaintiffs offer no support for their contention that the Court could order State
Defendants to reinstate Plaintiffs to their former positions at MSHS.  (*See* Pls.' State Opp'n 17–
18.)  State Defendants cannot control Mount Sinai Defendants' hiring decisions, and the fact that
Plaintiffs "remain unemployed" does not mean that the Court can provide any redress by
"affirm[ing] the illegality of [Section 2.61]" — a regulation that no longer exists.  (*See id.*)

U.S. 85, 91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)); *see also Fikre*, 601 U.S. at 241 (describing the "formidable burden" of a defendant claiming that a case is moot because the challenged practice cannot "reasonably be expected to recur" (quoting *Friends of the Earth*, 528 U.S. at 189–90)).

      State Defendants have met their burden.  The DOH clearly indicated its intent to cease enforcement of Section 2.61 well before its repeal, Heslin Letter, and the repeal went into effect thereafter, 45 N.Y. Reg. 22 (Oct. 4, 2023); thus, reoccurrence of a similar mandate is only "theoretically possible" and Plaintiffs' argument to the contrary is "mere speculation."  *Mongielo v. Hochul*, No. 22-CV-116, 2023 WL 2307887, at *8 (W.D.N.Y. Mar. 1, 2023) (alteration omitted) (quoting *Russman v. Bd. of Educ.*, 260 F.3d 114, 120 (2d Cir. 2001)) (finding that the plaintiffs' claim for injunctive relief was moot after challenged mask mandate in schools was rescinded); *see also Marciano*, 2023 WL 3477119, at *2 ("The voluntary cessation exception is . . . inapplicable because 'there is no reasonable expectation that the alleged violation will recur' and because [d]efendants' repeal of the vaccination mandate has 'completely and irrevocably eradicated the effects of the alleged violation,' . . . ." (quoting *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016))).  The Court is also not persuaded that this exception applies on the basis that State Defendants repealed Section 2.61 solely to avoid appellate review of the state court's decision in *Bassett*, 185 N.Y.S.3d 578.  (*See* Pls.' State Opp'n 5, 15.)  In addition to the fact that this Court is not bound to follow *Bassett*, especially when federal constitutional questions are raised, Plaintiffs' argument is undermined by the Appellate Division's decision to stay the appeal in *Bassett*, followed by its dismissal of the appeal as moot.  *See Med. Profs. for Informed Consent v. Bassett*, 197 N.Y.S.3d 785, 787–88

(App. Div. 2023). *Bassett*'s resolution does not support Plaintiffs' argument that State Defendants intend to impose a rule like Section 2.61 again.

Accordingly, the voluntary cessation exception to the mootness doctrine does not apply to Plaintiffs' claims for injunctive relief.[10] Plaintiffs' claims for injunctive relief against State Defendants are moot, and the Court therefore dismisses them without prejudice for lack of subject matter jurisdiction. *Fikre*, 601 U.S. at 240–41 (noting that when a plaintiff has already secured the relief sought in a case, "a federal court must dismiss the case as moot"); *see also Evans v. N.Y.C. Dep't of Educ.*, No. 22-CV-7901, 2023 WL 8034449, at *4 (S.D.N.Y. Nov. 20, 2023) (finding moot the plaintiff's challenge to vaccine mandate after mandate was lifted); *Rivera v. City of New York*, No. 22-CV-616, 2023 WL 6385771, at *8–10 (E.D.N.Y. Sept. 30, 2023) (same).

### ii.   Sovereign immunity bars Plaintiffs' claims for damages

State Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' remaining claims against them because Eleventh Amendment sovereign immunity bars claims for damages against state officials. (State Mem. 17–18.) In support, State Defendants note that states and their officials are susceptible to suits for damages only if "the state consents to suit,

---

[10] Plaintiffs briefly reference the exception to the mootness doctrine for violations that are capable of repetition yet evading review, but Plaintiffs do not appear to argue that the exception applies in this case. (*See* Pls.' State Opp'n 15–17.) This exception "applies only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Marciano v. Adams*, No. 22-570, 2023 WL 3477119, at *1 (2d Cir. May 16, 2023) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)). Plaintiffs offer no basis for the Court to conclude that they would be subjected to another similar mandate, nor do they argue that the duration of the mandate is too short to allow for full litigation of these claims. Accordingly, this exception also does not apply.

Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception," and argue that none of these circumstances are present in this case.  (*Id.* (quoting *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019)).)  State Defendants observe that Plaintiffs have brought their claims under 42 U.S.C. § 1983, and assert that because Congress did not abrogate state immunity in enacting section 1983 and New York did not waive its immunity to suits for damages under section 1983, Plaintiffs' claims are barred.  (*Id.* at 18.)

Plaintiffs appear to agree that the Eleventh Amendment bars suits for damages against states and their officials but contend that the Eleventh Amendment has been erroneously interpreted and that the Supreme Court should overturn such a reading.  (Pls.' State Opp'n 22 ("[E]xisting precedent provides that the Eleventh Amendment bars suits at law in federal court by a citizen of a state against her own state.  Such errant interpretation should be overturned by the . . . Supreme Court as it fails to comport with the original intent of the Amendment.").)  Plaintiffs concede that the change in law they seek "cannot be granted by this Court," but Plaintiffs intend to "preserve their rights to make such arguments to the Supreme Court."[11]  (*Id.* at 23.)

---

[11]  Plaintiffs also claim, in their opposition to State Defendants' motion to dismiss, that they intended to sue Governor Hochul in her personal capacity, (Pls.' State Opp'n 21 n.5), even though they named her only in her official capacity in both the original and amended complaints, (*see* Compl. 1; Am. Compl. 1).  The Court rejects Plaintiffs' belated attempt to amend the Amended Complaint by adding claims against Governor Hochul in her personal capacity.  In both the Complaint and Amended Complaint, Plaintiffs not only specified in the caption that Governor Hochul is sued in her official capacity, but they also reiterated that "[s]he is sued in her official capacity" when describing the parties.  (Compl. ¶ 17; Am. Compl. ¶ 17.)  Moreover, "[i]t is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss."  *Milligan v. GEICO Gen. Ins. Co.*, No. 20-3726, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022) (quoting *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999)); *see also Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 453 n.11 (S.D.N.Y. 2021); *Tandian v. State Univ. of N.Y.*, --- F. Supp. 3d ---, ---, 2023 WL 8827577, at *9 (N.D.N.Y. Oct. 13, 2023) ("A plaintiff may not add a defendant or amend a cause of action in its

"As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013) (first citing U.S. Const. amend. XI; and then citing *Alden v. Maine*, 527 U.S. 706, 727–28 (1999)). States may only be sued in federal court when they have waived their sovereign immunity, Congress has acted to abrogate state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment, or the plaintiff is suing a state official in his or her official capacity for prospective injunctive relief from an ongoing constitutional violation. *See* U.S. Const. amend. XI; *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) ("The Eleventh Amendment precludes suits against a state unless the state expressly waives its immunity or Congress abrogates that immunity." (citing *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 95 (2d Cir. 2002))); *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Mary Jo C.*, 707 F.3d at 152 (internal quotation marks omitted) (quoting *Woods*, 466 F.3d at 236); *see also Thomas*, 857 F. App'x at 37 (observing that the Eleventh Amendment's bar on suits against states "includes suits against state officials in their official capacities"); *McCloud v. Jackson*, 4 F. App'x 7, 10 (2d Cir. 2001) (stating that the Eleventh Amendment bars claims against the New York Division of Parole (citing *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999))). "New York has not

---

memorandum of law in response to the defendants' motions to dismiss . . . ."). The Court accordingly declines to consider this argument.

21

waived its immunity for damages claims brought under 42 U.S.C. § 1983, nor has Congress

abrogated it in enacting § 1983." *Thomas*, 857 F. App'x at 37 (first citing *Trotman v. Palisades*

*Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977); and then citing *Dube v. State Univ.*

*of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)).

Because Plaintiffs' claims for damages are brought under section 1983, these claims are

barred by Eleventh Amendment sovereign immunity, and the Court lacks subject matter

jurisdiction to address them. *See Klein v. Zugabie*, No. 20-1975, 2021 WL 5313708, at \*2 (2d

Cir. Nov. 16, 2021) (affirming dismissal of section 1983 damages claims on Eleventh

Amendment sovereign immunity grounds); *Wilson v. City of New York*, No. 23-CV-7771, 2024

WL 1308706, at \*2 (E.D.N.Y. Mar. 26, 2024) (dismissing on sovereign immunity grounds the

plaintiff's section 1983 claims for money damages against New York); *see also We the Patriots*

*I*, 17 F.4th at 295 (affirming denial of preliminary injunction against enforcement of Section 2.61

and observing that even if the case were to go forward, "sovereign immunity would likely

prevent [p]laintiffs from obtaining money damages from the State"). Accordingly, the Court

dismisses without prejudice Plaintiffs' claims for damages against State Defendants.[12] *See*

*Karupaiyan v. New York*, No. 23-1257, 2024 WL 2174272, at \*2 (2d Cir. May 15, 2024) ("When

subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits

of the case,' and accordingly 'Article III deprives federal courts of the power to dismiss the case

---

[12] Because the Court lacks subject matter jurisdiction over all of Plaintiffs' claims
against State Defendants, the Court does not address the merits of these claims. *See Perez v.*
*Oxford Univ.*, No. 21-CV-4844, 2022 WL 1446543, at \*5 (S.D.N.Y. Apr. 11, 2022) ("Lacking
subject matter jurisdiction, the [c]ourt does not address the substantive issue of whether the
[a]mended [c]omplaint fails to state a claim.").

with prejudice.'" (quoting *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021))).

    **c.**   **Plaintiffs fail to plausibly allege Title VII claims**

    Mount Sinai Defendants argue that Plaintiffs fail to state plausible claims under Title VII for religious discrimination under a failure-to-accommodate theory.[13] (MS Mem. 6–11.) In support, Mount Sinai Defendants point to numerous decisions from other courts in the Second Circuit dismissing Title VII claims similar to those asserted by Plaintiffs. (*Id.* at 6–8.) They argue that such cases show that hospital vaccination policies promulgated pursuant to Section 2.61 are lawful under federal, state, and city antidiscrimination laws.[14] (*Id.*) Mount Sinai

---

[13] On April 27, 2024, Plaintiffs filed a letter notifying the Court of the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. ---, 144 S. Ct. 967 (2024), (Pls.' Letter, Docket Entry No. 51), and on April 29, 2024, Mount Sinai Defendants responded, (Mount Sinai Defs.' Letter ("MS Letter"), Docket Entry No. 52). In their letter, Plaintiffs suggest that *Muldrow* "may impact the pending motion to dismiss" by Mount Sinai Defendants because it clarified that "an employee bringing a claim under Title VII 'need show only *some* injury respecting her employment terms or conditions,'" rather than "substantial" injury. (Pls.' Letter 1 (emphasis by Plaintiffs) (quoting *Muldrow*, 144 S. Ct. at 977).) Plaintiffs accurately characterize the Supreme Court's decision, but "Mount Sinai Defendants did not argue in their motion that Plaintiffs did not allege sufficient injury regarding their employment terms or conditions." (MS Letter.) Accordingly, *Muldrow* is irrelevant to the issues before the Court, and the Court does not consider Plaintiffs' letter in reaching its decision.

[14] Plaintiffs contend that the cases Mount Sinai Defendants rely on were all "based on the legality of [Section 2.61]" and now "are abrogated and of no effect" following *Bassett*, 185 N.Y.S.3d 578. (Pls.' MS Opp'n 15.) Plaintiffs argue that *Bassett* declared Section 2.61 illegal, and that Mount Sinai Defendants "lean on cases decided prior to [Section 2.61] being declared void." (*Id.* at 16.) As noted earlier with respect to Plaintiffs' similar response to State Defendants' arguments, this Court is not bound to follow *Bassett*, especially when federal claims are concerned, and Plaintiffs' argument is further undermined by the Appellate Division's decision to stay the appeal in *Bassett* followed by its dismissal of the appeal as moot. *See Bassett*, 197 N.Y.S.3d at 787–88. Moreover, a state court ruling on the legality of Section 2.61 — issued *after* the acts by Mount Sinai Defendants at issue here — is irrelevant to whether Mount Sinai Defendants violated Title VII by complying with state law in effect at the time. During the relevant period, Mount Sinai Defendants were required to comply with Section 2.61,

Defendants contend that Plaintiffs allege no facts supporting their claims for religious discrimination and that "[t]he sole reason for their termination was their refusal to be vaccinated as required by [Section 2.61] and not . . . their religion." (*Id.* at 9.) They further argue that "granting Plaintiffs a religious exemption from the mandatory vaccination requirement would cause the Mount Sinai Defendants an undue hardship because it would require them to violate [Section 2.61]." (*Id.* at 10; MS Reply 5.)

Plaintiffs argue that they stated plausible claims for relief under Title VII for failure to accommodate.[15] (Pls.' MS Opp'n 17–21.) They contend that they "both had bona fide religious beliefs which conflicted with the [Mount] Sinai Defendants' vaccine mandate," and that "[f]or failure to comply, both [P]laintiffs lost their jobs." (*Id.* at 19–20.) Plaintiffs argue that Mount

---

which was governing law. Accordingly, *Bassett* does not render irrelevant cases that considered the legality of similar actions under Title VII.

[15] Although Plaintiffs list two separate counts in their Amended Complaint under Title VII — one for "Failure to Accommodate" and one for "Religious Discrimination," (Am. Compl. 27–28) — both counts appear to allege religious discrimination based on failure to accommodate, (*id.* ¶ 146 (claiming, under the "Religious Discrimination" count, that Mount Sinai Defendants "fail[ed] and refus[ed] to offer . . . religious accommodation" due to Plaintiffs' religion)). Because both counts appear to allege failure to accommodate, the Court considers only that theory.

Regardless, Plaintiffs do not allege facts that would support a Title VII claim under a disparate treatment theory of religious discrimination. *See Claiborne v. Winthrop Univ. Hosp.*, No. 17-CV-6692, 2019 WL 2439430, at *3 (E.D.N.Y. Feb. 13, 2019) (observing that plaintiffs "may claim a violation of religious discrimination under Title VII under theories of either disparate treatment or denial of reasonable accommodation" (quoting *Weber v. City of New York*, 973 F. Supp. 2d 227, 249 (E.D.N.Y. 2013))). Plaintiffs allege no facts suggesting that they were treated differently from others based on their religion, nor do they allege any "circumstances giving rise to an inference of discrimination," as required to assert a disparate treatment claim under Title VII. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (quoting *Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022)). They similarly fail to allege that they were "qualified for the position" they sought, *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019), because even as described in the Amended Complaint, receipt of the COVID-19 vaccine was a requirement for their positions while Section 2.61 was in effect. The Court accordingly declines to address further whether Plaintiffs plausibly stated a claim for religious discrimination based on disparate treatment.

Sinai Defendants "did nothing to provide accommodations to those employees who had religious objections to vaccination." (*Id.* at 17.)  In support, they contend that while Mount Sinai Defendants "plainly had an opportunity to provide religious accommodations to those employees who objected to the vaccine," they failed to consider alternatives "such as flexible scheduling, voluntary shift substitutions or swaps, job reassignments, or modifications to workplace policies or practices" that might have served to accommodate those beliefs.  (*Id.* at 18.)  Plaintiffs assert that they "would have welcomed accommodations," but that none were offered.  (*Id.* at 19.)

"Title VII . . . requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'"  *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)).  To establish a claim for failure to accommodate, a plaintiff has the initial burden to prove a *prima facie* case of discrimination.  *Doughty v. Dep't of Developmental Servs. STS*, 607 F. App'x 97, 98 (2d Cir. 2015); *see also Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).  The burden then shifts to the defendant to establish that it offered the plaintiff a reasonable accommodation, or that such an accommodation would have been an undue hardship.  *Baker*, 445 F.3d at 546 ("Once a *prima facie* case is established by the employee, the employer 'must offer [her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship.'" (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002))).  To avoid liability, "the employer need not offer the accommodation the employee prefers.  Instead, when any reasonable accommodation is provided, the statutory inquiry ends."  *Cosme,* 287 F.3d at 158; *see also Baker,* 445 F.3d at 548 ("We do note that employees are not entitled to hold out for the most beneficial accommodation." (citation and internal quotation marks omitted)).

i.   **Plaintiffs have proven a *prima facie* case of religious discrimination based on failure to accommodate**

"To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim must plausibly allege that '(1) [he or she] held a bona fide religious belief conflicting with an employment requirement; (2) [he or she] informed [his or her] employers of this belief; and (3) [he or she was] disciplined for failure to comply with the conflicting employment requirement.'" *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)); *see Baker*, 445 F.3d at 546; *Weber v. City of New York*, 973 F. Supp. 2d 227, 258 (E.D.N.Y. 2013).  To satisfy the first element, the Court must inquire "whether the beliefs professed by a claimant are sincerely held and whether they are, in his own scheme of things, religious." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 720 (S.D.N.Y. 2023) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)); *see also Jackson v. N.Y. State Off. of Mental Health — Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at *5 (E.D.N.Y. May 1, 2024) (citing *Gardner-Alfred*, 651 F. Supp. 3d at 720); *Hickey v. State Univ. of N.Y. at Stony Brook Hosp.,* No. 10-CV-1282, 2012 WL 3064170, at *6 (E.D.N.Y. July 27, 2012) (stating the same).  The second element requires the employee to properly "inform[] her employer of this belief." *Jackson*, 2024 WL 1908533, at *5 (citing *Doughty*, 607 F. App'x at 98); *Hickey,* 2012 WL 3064170, at *7 ("To satisfy the second element, a plaintiff must properly notify the employer of the plaintiff's conflicting religious belief."); *Massie v. Ikon Off. Sols., Inc.*, 381 F. Supp. 2d 91, 100 (N.D.N.Y. 2005).  To satisfy the third element, a plaintiff must show that he suffered an adverse employment action for failing to comply with the employment requirement that conflicted with his religious belief.  *See Jackson*, 2024 WL 1908533, at *5–6; *Edwards v. Elmhurst Hosp. Ctr.*, No. 11-CV-4693, 2013 WL 839535, at *4 (E.D.N.Y. Feb. 15,

2013) ("The third prong requires some adverse employment action — typically, discipline, demotion, transfer or termination — for refusing to comply with the conflicting employment requirement." (citation and alterations omitted)), *report and recommendation adopted*, 2013 WL 828667 (E.D.N.Y. Mar. 6, 2013).

Plaintiffs have established a *prima facie* case of religious discrimination based on failure to accommodate.  First, they have adequately alleged that they both held bona fide religious beliefs that conflicted with MSHS's vaccination requirement.  (Am. Compl. ¶¶ 20, 48–50, 52, 91, 96.)  Second, Plaintiffs informed Mount Sinai Defendants of their beliefs.  (*Id.* ¶¶ 48–50, 95–96.)  Third, Plaintiffs lost their jobs for failing to comply with the vaccination requirement.  (*Id.* ¶¶ 1, 81–82, 87–89, 101, 103–04, 106.)  Mount Sinai Defendants do not appear to dispute that Plaintiffs have plausibly alleged a *prima facie* case of religious discrimination based on failure to accommodate.

### ii.   Providing Plaintiffs' requested accommodation would create an undue hardship for Mount Sinai Defendants

Even if a plaintiff can establish a *prima facie* case, "[a]n employer does not violate Title VII . . . if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'"  *D'Cunha*, 2023 WL 7986441, at *2 (quoting *Cosme*, 287 F.3d at 158); *Baker*, 445 F.3d at 546 (observing the same).  The Supreme Court recently rejected the "more than *de minimis*" standard for the employer's undue hardship showing, first articulated in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).[16]  *See Groff*, 600 U.S. at 468.  Undue

---

[16]   In *Groff v. DeJoy*, Gerald Groff brought a Title VII suit against his former employer, the United States Postal Service, for failing to accommodate his refusal to work on the Sabbath (*i.e.*, Sundays).  600 U.S. 447, 455–56 (2023).  His employer redistributed Groff's Sunday assignments to other employees, but subjected Groff to "progressive discipline," eventually leading to Groff's resignation.  *Id.*  The Third Circuit construed *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), as requiring that, in order to show "undue hardship," an employer

hardship is adequately established only "when a burden is substantial in the overall context of an employer's business." *Id.*; *see also D'Cunha*, 2023 WL 7986441, at \*3 (observing this shift in the "undue hardship" standard after *Groff*). "The defense of undue hardship 'may be raised in a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint.'" *D'Cunha*, 2023 WL 7986441, at \*2 (quoting *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)).

Mount Sinai Defendants have sufficiently shown that granting Plaintiffs a religious exemption would have imposed an "undue hardship" on their operations. When they denied Plaintiffs' requests for religious exemptions to the vaccination mandate, state law required all "[c]overed entities" — which indisputably included Mount Sinai Defendants[17] — to "continuously require personnel to be fully vaccinated against COVID-19." Section 2.61(c). The mandate did not allow for religious exemptions. *See* Section 2.61(d). Accordingly, Mount Sinai Defendants would have had to violate state law in order to grant Plaintiffs' requested religious exemptions, "thereby suffering an undue hardship." *See D'Cunha*, 2023 WL 7986441,

---

need only show that accommodating an employee's beliefs would have imposed "more than a de minimis cost" to the employer. *Id.* at 456. Observing that "[e]xempting Groff from Sunday work . . . 'imposed on his coworkers, disrupted the workplace and workflow, and diminished employee morale,'" the Third Circuit concluded that the employer had met its burden to show an "undue hardship." *Id.* (quoting *Groff v. DeJoy*, 35 F.4th 162, 175 (3d Cir. 2022)). The Supreme Court rejected this reading, concluding that "*Hardison* cannot be reduced to that one phrase" referencing a "de minimis" cost, and that the case is more properly explained by its repeated references to "substantial" burdens on the employer's operations. *Id.* at 468. The Supreme Court therefore concluded that "undue hardship" is shown only "when a burden is substantial in the overall context of an employer's business," and vacated and remanded the judgment as to Groff's claims. *Id.* at 468, 473.

[17] Section 2.61 defines "[c]overed entities" to include "any facility or institution included in the definition of 'hospital' in section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers." Section 2.61(a)(1)(i). Plaintiffs do not dispute that this includes Mount Sinai Defendants.

at *3 ("Defendant could not have granted [plaintiff's] religious-exemption request without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship.").  Courts in this circuit have dismissed similar Title VII claims brought against healthcare employers with COVID-19 vaccination mandates, on the basis that allowing plaintiffs the religious exemptions they sought would have created an undue hardship on the employer by forcing them to violate Section 2.61.  *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 436 (S.D.N.Y. 2023) (collecting "[a] long line of cases in the Southern and Eastern Districts of New York" that "have uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from [Section 2.61] at the cost of violating Section 2.61 and thus New York law"); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 509 (S.D.N.Y. 2023) ("Courts have repeatedly dismissed Title VII claims brought against healthcare employers with a mandatory COVID-19 vaccination requirement because providing the sought religious exemption would create an undue hardship on the employer who would be in violation of the state rule."), *aff'd*, 2024 WL 1107481 (2d Cir. Mar. 14, 2024); *see also, e.g.*, *Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945, 2024 WL 917330, at *2 (S.D.N.Y. Mar. 4, 2024) (granting the defendant employer's motion to dismiss the plaintiff's Title VII claim because "requiring [the defendant] to allow [the plaintiff] to continue working without receiving the COVID-19 vaccine would have 'imposed an undue hardship' on [the defendant] 'because it would require it to violate state law' in the form of [Section 2.61]" (alterations omitted) (quoting *Does 1–2*, 632 F. Supp. 3d at 145)); *Tandian*, 2023 WL 8827577, at *9 (same); *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, No. 22-CV-10643, 2023 WL 3626435, at *1 (S.D.N.Y. May 24, 2023) (same); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *5–6 (S.D.N.Y. May 15, 2023) (same); *Riley v. NYC Health + Hosps.*

*Corp.*, No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (same).  Like the defendants in these prior cases, Mount Sinai Defendants would have suffered an "undue hardship" if forced to grant religious exemptions to Plaintiffs because they would have violated state law.

The Court acknowledges that "it may be *possible* under [Section 2.61] for an employer to *accommodate* — not *exempt* — employees with religious objections, by employing them in a manner that removes them from [Section 2.61's] definition of 'personnel.'"  *See We The Patriots II*, 17 F.4th at 370.  Section 2.61 defines "personnel" as any employees or affiliates of a covered entity "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  Section 2.61(a)(2).  Plaintiffs do not allege that they requested any accommodation that would have removed them from this definition, nor do they allege that their roles would have permitted such an accommodation.  They allege that "their jobs did not require them to be patient facing or involve direct patient care," (Am. Compl. ¶ 113), but the only potential accommodation they describe (other than a blanket exemption) is a change to their work schedules "to lessen interaction with co-workers," (*id.* ¶ 26).  The Court has no basis to conclude that a change in shift schedules would have altogether eliminated the possibility of "expos[ing] other covered personnel, patients or residents to" COVID-19, *see* Section 2.61(a)(2), and Plaintiffs neither allege nor argue that Mount Sinai Defendants should have or could have granted them an accommodation that would have done so, (*see generally* Pls.' MS Opp'n).  Plaintiffs' allegations are insufficient to show that Mount Sinai Defendants could have accommodated their religious beliefs without undue hardship, and the Court therefore grants Mount Sinai Defendants' motion to dismiss Plaintiffs' Title VII claims.

**d.   The Court dismisses the Amended Complaint against Maksoud for the additional reason that it includes no allegations against her**

Mount Sinai Defendants argue that the Amended Complaint should be dismissed against Maksoud for the additional reason that Plaintiffs fail to include any allegations against her, "other than one alleging that she was employed by [MSHS] as Chief Human Resources Officer." (MS Mem. 15 (citing Compl. ¶ 14).)  Plaintiffs do not respond to this argument.

Courts have long held that "where the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."  *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999); *see also Patel v. Patel*, No. 23-CV-8765, 2024 WL 37094, at *4 (S.D.N.Y. Jan. 3, 2024) (citing *Dove*, 56 F. Supp. 2d at 335).

Because Plaintiffs failed to make any allegations against Maksoud and now fail to respond to the motion to dismiss the Amended Complaint against her, the Court grants the motion and dismisses the Amended Complaint in its entirety as against Maksoud.

**e.   The Court declines to exercise supplemental jurisdiction over Plaintiffs' NYSHRL and NYCHRL claims**

District courts may decline to exercise supplemental jurisdiction over state and city law claims if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 703 (2d Cir. 2023) (same); *One*

31

*Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims[.]").

Having dismissed all of Plaintiffs' claims over which the Court has original jurisdiction, "declining to exercise supplemental jurisdiction over the state-law and city-law claims is appropriate at this early stage of the litigation," and the Court accordingly dismisses without prejudice Plaintiffs' state law and city law claims. *See Bobadilla v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-10594, 2023 WL 7280478, at *6 (S.D.N.Y. Nov. 3, 2023) (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissing all federal claims against vaccine mandate); *see also Pereira v. Town of N. Hempstead*, 682 F. Supp. 3d 234, 247–48 (E.D.N.Y. 2023) (dismissing state law claims "after dismissing a plaintiff's only federal claims"); *Probiv v. PayCargo LLC*, No. 22-CV-2907, 2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023) (observing that district courts have "discretion in deciding whether to exercise supplemental jurisdiction over state law claims . . . so long as the federal claims were not dismissed for lack of subject matter jurisdiction").

**f.   The Court grants leave to amend the Amended Complaint as to Plaintiffs' Title VII claims**

All Defendants argue that Plaintiffs' Amended Complaint should be dismissed with prejudice.  (State Mem. 25; MS Mem. 16.)  Plaintiffs request that "[s]hould this Court believe that any allegations . . . have not been sufficiently pled," the Court should grant Plaintiffs leave to file a second amended complaint "to cure any such defect."  (Pls.' MS Opp'n 19 n.4.)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by

amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks omitted)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Bus. Casual Holdings LLC v. YouTube, LLC*, No. 22-CV-3007, 2023 WL 6842449, at *1 (2d Cir. Oct. 17, 2023) ("Proposed amendments are futile if they would fail to cure prior deficiencies or state a claim." (quoting *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015))); *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners Inc.*, 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW*, 783 F.3d at 389. "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). "[I]t is within the sound discretion of the district

court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

The Court's "lack of subject matter jurisdiction" over Plaintiffs' claims against State Defendants is a "substantive deficiency" that cannot be cured in this case, "and amendment [of the Amended Complaint] would thus be futile." *See Logan v. Town of Windsor*, 833 F. App'x 919, 920 (2d Cir. 2021) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). The Court therefore denies leave to amend these claims.

However, the Court grants Plaintiffs leave to amend their Title VII claims against Mount Sinai Defendants. Although Plaintiffs' Amended Complaint fails to state a plausible Title VII claim for failure to accommodate their religious beliefs, Plaintiffs may amend to plead additional facts, if any, to support an allegation that Mount Sinai Defendants could have accommodated Plaintiffs' religious beliefs by "employing them in a manner that removes them from [Section 2.61's] definition of 'personnel.'" *See We The Patriots II*, 17 F.4th at 370; *Jackson*, 2024 WL 1908533, at *6–8 (denying motion to dismiss Title VII challenge to the defendants' vaccine mandate implemented pursuant to Section 2.61, on the basis that the defendants failed to show "that allowing [the p]laintiff to work remotely would have imposed an undue hardship").

### III. Conclusion

For the reasons stated above, the Court grants State Defendants' motion to dismiss in its entirety and dismisses Plaintiffs' claims against them without prejudice and without leave to amend. The Court also grants Mount Sinai Defendants' motion to dismiss, but grants Plaintiffs leave to amend their Title VII claims against Mount Sinai Defendants. Plaintiffs are directed to file a second amended complaint within thirty days of this Memorandum and Order. If Plaintiffs

decide to file a second amended complaint, Plaintiffs may include their state- and city-law claims.

Dated:  June 26, 2024
        Brooklyn, New York

SO ORDERED:


_____s/MKB_____
MARGO K. BRODIE
United States District Judge