UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

HALINA HACZYNSKA and MARGARET
WIELKOPOLAN,

                              Plaintiffs,

                    v.

MOUNT SINAI HEALTH SYSTEM, INC., THE
MOUNT SINAI HOSPITAL, ICAHN INSTITUTE
OF MEDICAL RESEARCH AT MOUNT SINAI
LLC, JANE MAKSOUD, MARCIA L. MESECK,
SHARON MIAS, KATHLEEN HOCHUL, *in
her official capacity as Governor of the State of New
York*, JAMES V. MCDONALD, *in his official
capacity as Acting Commissioner of the New York
Department of Health*, and JOHN DOES 1–20,

                              Defendants.

--------------------------------------------------------------

**MEMORANDUM & ORDER**
23-CV-3091 (MKB)

MARGO K. BRODIE, United States District Judge:

  Plaintiffs Dr. Halina Haczynska and Margaret Wielkopolan commenced the above-

captioned action on April 24, 2023, against Defendants Kathleen Hochul, in her official capacity

as Governor of the State of New York; James V. McDonald, in his official capacity as

Commissioner[1] of the New York Department of Health (together, "State Defendants"); Mount

Sinai Health System, Inc. ("MSHS"); the Mount Sinai Hospital; Icahn Institute of Medical

Research at Mount Sinai LLC; Jane Maksoud; Marcia L. Meseck; Sharon Mias; and John Does

1–20 (together, "Mount Sinai Defendants"). (Compl., Docket Entry No. 1.) On the same day,

---

  [1] When Plaintiffs filed their Amended Complaint in this case, McDonald was serving as
the Acting Commissioner of the New York Department of Health. On June 9, 2023, he was
confirmed as Commissioner. *James V. McDonald M.D., M.P.H.*, N.Y. State Dep't of Health,
https://www.health.ny.gov/commissioner/bio (last updated May 2024).

Plaintiffs filed an Amended Complaint ("FAC").  (FAC, Docket Entry No. 2.)  Plaintiffs are both former employees of MSHS, and brought this action based on State Defendants' regulation mandating that healthcare facilities require COVID-19 vaccinations for certain workers, and on Mount Sinai Defendants' actions in complying with that regulation.  On July 12, 2024, Plaintiffs filed a second amended complaint.[2]  (Second Am. Compl. ("SAC"), Docket Entry No. 54.)  Plaintiffs renewed their claims against Mount Sinai Defendants for religious discrimination based on failure to accommodate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and included new claims for sex, age, national origin, and disability discrimination under the NYSHRL and NYCHRL[3]; and a new claim for common law fraud.  (*Id.* ¶¶ 117–54.)

---

[2]  Defendants moved to dismiss the FAC and on June 26, 2024, the Court granted the State Defendants' and Mount Sinai Defendants' motions to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (the "June 2024 Decision").  (June 2024 Decision, Docket Entry No. 53); *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300 (E.D.N.Y. 2024).

[3]  In the SAC, Plaintiffs allege under a heading "Title VII — Failure to Accommodate" that "failure to accommodate Dr. Haczynska was also based partly on discriminatory animus against Dr. Haczynska based both on sex, as a woman, an[d] on age, as a person who was considered to be too old for the job" and that "failure to accommodate [Wielkopolan] was also based partly" on age discrimination.  (SAC ¶¶ 122–23.)  However, Plaintiffs state in their briefing that they did not raise any new discrimination claims under Title VII in the SAC, and instead have raised new "claims of actual or perceived age, creed, sex, disability and national origin discrimination" under the NYSHRL.  (Pls.' Mem. in Opp'n to Mount Sinai Defs.' Mot. to Dismiss Pls.' SAC ("Pls.' Opp'n") 21, Docket Entry No. 66.)  Mount Sinai Defendants argue that Plaintiffs' Title VII sex and age discrimination claims "should be dismissed based on Plaintiffs' representation that they did not raise any such claim[s]."  (Mount Sinai Reply in Supp. of Defs.' Mot. Mount Sinai Defs.' Mot. to Dismiss Pls.' SAC ("Defs.' Reply") 7 n.3, Docket Entry No. 65.)  Based on Plaintiffs' representation that they did not bring Title VII claims for sex and age discrimination, to the extent any allegations in the SAC suggest otherwise, the Court

On October 23, 2024, Mount Sinai Defendants moved to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiffs opposed the motion.[4]  For the reasons set forth below, the Court grants Mount Sinai Defendants' motion.

## I.  Background

The Court assumes the truth of the factual allegations in the SAC for the purpose of deciding Mount Sinai Defendants' motion.  The Court also considers documents incorporated by reference in the SAC and takes judicial notice of relevant state laws, state regulations, case law, and public documents that are not subject to dispute.[5]  *See* Fed. R. Evid. 201(b) (permitting

_____

grants Defendants' motion and dismisses any such claims.  *See, e.g.*, *Amid v. Vill. of Old Brookville*, No. 11-3800, 2013 WL 527772, at \*5 (E.D.N.Y. Feb. 7, 2013) (dismissing plaintiff's claim where plaintiff stated she withdrew "any and all causes of action sounding in 42 U.S.C. § 1983," leading "the court to conclude that [p]laintiff has declined to pursue any claim pursuant to [s]ection 1983"); *Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 6 n.1 (D. Conn. 2011) (dismissing a claim where plaintiff stated he "declines to pursue this claim, and, therefore, does not contest defendants' challenges thereto").

[4]  (Mount Sinai Defs.' Mot. to Dismiss Pls.' SAC ("Defs.' Mot."), Docket Entry No. 61; Mount Sinai Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 64; Pls.' Opp'n; Defs.' Reply.)

[5]  In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see also Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (quoting *Pani*, 152 F.3d at 75); *Sahni v. Staff Att'ys Ass'n*, No. 14-CV-9873, 2016 WL 1241524, at \*5 (S.D.N.Y. Mar. 23, 2016) ("Courts in this District [have] routinely take[n] judicial notice of state administrative records."); *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 206 (S.D.N.Y. 2015) (noting that "when a court takes judicial notice of documents in the public record at the [m]otion [t]o [d]ismiss stage," it may consider them "only to establish their existence and legal effect[] or to determine what statements they contained [but]

judicial notice of facts "not subject to reasonable dispute"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (stating that "relevant matters of public record" are susceptible to judicial notice).

### a.   Factual background

#### i.   Dr. Haczynska's employment with MSHS

Dr. Haczynska "holds a Ph.D. in Pharmaceutics: Clinical Biochemistry." (SAC ¶ 17.) She was employed by MSHS in the Icahn School of Medicine at Mount Sinai for over eighteen years. (*Id.* ¶ 18.) MSHS is a New York State not-for-profit corporation that "owns, operates, affiliates, manages, and/or controls a hospital and medical care services facilities including [t]he Mount Sinai Hospital [and the] Icahn Institute of Medical Research at Mount Sinai LLC." (*Id.* ¶ 9.) At the time of her termination, Dr. Haczynska was employed as a Quality Monitor Analyst at the Vaccine and Cell Therapy Laboratory ("VCTL"), where Meseck was her immediate supervisor. (*Id.* ¶¶ 12, 19, 24.) Her duties were primarily "administrative and involved paperwork and audits." (*Id.* ¶ 20.) She performed her role in a lab environment, which did not involve patient care or contact. (*Id.*)

On June 14, 2021, MSHS informed all employees that it was considering a COVID-19 vaccine mandate, noting that any policy put into place would take into account "medical or religious reasons why [some employees] cannot get vaccinated." (*Id.* ¶ 29.) As a devout Roman

---

not for the truth of the matters asserted" (quoting *Liang v. City of New York*, No. 10-CV-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013))). The Court may also take judicial notice of "documents retrieved from official government websites." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting examples).

The Court accordingly considers state laws, state regulations, state case law, and official public records to the extent Plaintiffs rely on them in the SAC, including Section 2.61, the rule at issue in this case which required covered healthcare facilities to ensure that staff were vaccinated against COVID-19. N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (Aug. 26, 2021).

Catholic, Dr. Haczynska "is unable to accept a vaccine that conflicts with her sincere moral and religious beliefs." (*Id.* ¶ 15.)

Prior to the summer of 2021, "Meseck would insist, pressure, and coerce Dr. Haczynska into submitting to an annual flu vaccination," and "misinformed and misrepresented to Dr. Haczynska that MSHS and the State of New York mandated flu vaccination." (*Id.* ¶¶ 25, 27.) Mescek "never informed Dr. Haczynska that a religious exception was available or that she had a right to refuse flu vaccination," and "imposed a flu vaccination mandate as her own policy . . . upon all VCTL workers including Dr. Haczynska." (*Id.*) Dr. Haczynska "submitted to the flu vaccination against her will" for five years "under the fraud-induced belief that if she refused the vaccine or sought an exemption that she would lose her job." (*Id.* ¶ 28.) "Beginning July 21, 2021, at the recommendation of her primary care physician, Dr. Haczynska obtained counseling through the MSHS Employee Assistance Program[] because of the anxiety, pressure, and emotional distress she endured because of Meseck's tactics to force VCTL workers to vaccinate for flu." (*Id.* ¶ 30.)

Starting on July 21, 2021, Meseck began pressuring Dr. Haczynska to receive the COVID-19 vaccine, which was not mandated by New York State or MSHS at the time, and Dr. Haczynska refused. (*Id.* ¶ 31.) Meseck "continued to pressure, coerce and embarrass Dr. Haczynska to submit to" the COVID-19 vaccine, "including in the presence of co-workers and discussing her personal medical decisions with co-workers to embarrass and ridicule her, and in violation of her privacy rights." (*Id.* ¶ 32.) Meseck "treated Dr. Haczynska negatively and disparately than other employees who were vaccinated, because he was dissatisfied with Dr. Haczynska due to her refusal to be vaccinated." (*Id.* ¶ 35.)

On August 12, 2021, MSHS imposed a mandatory COVID-19 vaccination policy on all faculty and staff, with limited exceptions for religious and medical reasons.  (*Id.* ¶ 37.)  The new policy required all employees to obtain their first shot by September 13, 2021, and further provided that those who did not receive it by then must have a religious or medical exemption or be subject to discipline that could include termination.  (*Id.*)  A few days later, on August 18, 2021, MSHS provided all employees with a link to submit requests for religious exemptions. (*Id.* ¶ 43.)  On the same day, the New York Department of Health ("DOH") issued an Order for Summary Action requiring certain healthcare facilities to "continuously require all covered personnel to be full vaccinated against COVID-19."  *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274–75 (2d Cir.) (per curiam) (*We the Patriots I*), *clarified*, 17 F.4th 368 (2d Cir. 2021) (*We the Patriots II*), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022); (SAC ¶ 41.)  The rule allowed for two exemptions to its vaccination requirement — a medical exemption, as well as a religious exemption.  The religious exemption provided:

> Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer.

(SAC ¶ 41.)  On August 21, 2021, Dr. Haczynska submitted a request for a religious exemption through the link provided by MSHS.  (*Id.* ¶ 44.)  In support of her exemption request, she cited her "strong Christian-Catholic background" and asserted that the vaccines went against her "sincerely held religious beliefs" because they were produced using "fetal cell lines" derived from aborted fetuses.  (*Id.* ¶¶ 42, 44.)  Dr. Haczynska also submitted two letters written by religious leaders supporting her view that a Roman Catholic can refuse a vaccine if required to do so by her conscience.  (*Id.* ¶¶ 45–46.)  Dr. Haczynska was willing to change her work schedule to lessen interaction with others or to take other "reasonable" steps to allow for a

religious exemption or accommodation, and she regularly tested for exposure to COVID-19. (*Id.* ¶¶ 21–23.)

On August 26, 2021, Dr. Haczynska received confirmation that her request for a religious exemption had been received and was under review by a committee. (*Id.* ¶ 50.) The same day, the DOH published Section 2.61, which directed general hospitals and nursing homes to "continuously require" certain employees to be fully vaccinated against COVID-19 beginning on September 27, 2021, and on October 7, 2021 for all other "covered [healthcare] entities."[6] N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(c) (Aug. 26, 2021) ("Section 2.61"); *see also We the Patriots I*, 17 F.4th at 274–75. Section 2.61 applied only to those defined as "personnel," namely, those employees, staff members, and volunteers "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." Section 2.61(a)(2); *We the Patriots I*, 17 F.4th at 274. Section 2.61 eliminated the religious exemption that was included in the original Order for Summary Action. *We the Patriots I*, 17 F.4th at 274–75; (SAC ¶¶ 51–52). The next day, MSHS informed employees that religious exemptions from its mandatory COVID-19 vaccine policy would no longer be allowed, citing Section 2.61's application to MSHS and its employees. (*Id.*

---

[6] Citations to Section 2.61 throughout this decision are to the version in effect at the time of the relevant events in this case, as published in the New York State Register. 43 N.Y. Reg. 6–7 (Sept. 15, 2021). Because Section 2.61 was promulgated under DOH's emergency rulemaking power, DOH issued a notice of proposed rulemaking on November 24, 2021, to permanently adopt Section 2.61 and its COVID-19 vaccination mandate for healthcare facilities. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274–75 (2d Cir.) (per curiam) (*We the Patriots I*), *clarified*, 17 F.4th 368 (2d Cir. 2021) (*We the Patriots II*), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022); 43 N.Y. Reg. 4–8 (Dec. 15, 2021). The permanent rule went into effect on June 22, 2022, in a form substantively the same as Section 2.61. *See* 44 N.Y. Reg. 10 (June 22, 2022). After the federal government ended its vaccination requirements for healthcare facilities, the DOH recommended Section 2.61 be repealed. 45 N.Y. Reg. 22 (Oct. 4, 2023). Section 2.61 was repealed effective October 4, 2023. *Id.*

¶ 53.)  MSHS directed all employees who had previously sought a religious exemption to receive their first vaccine dose by September 13, 2021, an earlier date than required by Section 2.61. (*Id.*); Section 2.61(c).  MSHS explained that failure to receive the vaccine would cause the employee to "be placed into immediate job jeopardy and . . . terminated shortly thereafter." (SAC ¶ 53.)  On August 30, 2021, Dr. Haczynska was told directly that MSHS could not grant her religious exemption request because Section 2.61 made such exemptions impermissible for employees of healthcare organizations like MSHS.  (*Id.* ¶ 54.)  On September 1, 2021, the committee reviewing Dr. Haczynska's request for an exemption denied it, stating that, "[t]he [c]ommittee, which is multidisciplinary and includes medical and other experts, determined that your condition does not preclude you from getting vaccinated against COVID-19."  (*Id.* ¶ 56.) The same day, Mias, the Executive Administrator of MSHS, informed Dr. Haczynska and others copied on an email that Dr. Haczynska appeared as "not vaccinated" on the "employee vaccination report" and reiterated the September 13, 2021 deadline.  (*Id.* ¶¶ 13, 57.)  When Dr. Haczynska continued to refuse the vaccine, she was placed on unpaid leave on September 15, 2021, with termination to be effective September 27, 2021.  (*Id.* ¶ 62.)

On September 15, 2021, MSHS notified employees of a decision from the United States District Court for the Northern District of New York issuing a statewide temporary restraining order ("TRO") enjoining enforcement of Section 2.61 that could potentially lead to the availability of religious exemptions.  (*Id.* ¶ 63); *see Dr. A. v. Hochul*, No. 21-CV-1009, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021).  Dr. Haczynska returned to work on September 27, 2021, and on October 18, 2021, she received an email from the committee in charge of reviewing exemption requests, informing her that it had begun releasing exemption decisions and was requesting more information as needed.  (SAC ¶¶ 66–67.)  Dr. Haczynska was not asked for

8

more information, but on November 19, 2021, she was told that her request had been denied on the basis that she "did not sufficiently establish a sincerely held religious or moral belief that is contrary to the practice of immunization or the COVID-19 vaccine." (*Id.* ¶¶ 67–68 (emphasis omitted).) On November 22, 2021, Dr. Haczynska "submitted an appeal" of the committee's denial of her religious exemption request, "asserting [a] violation of her civil rights under Title VII of the Civil Rights Act." (*Id.* ¶ 70.) Dr. Haczynska received an email on November 24, 2021, informing her that if her request had been denied, then she must "follow the protocol." (*Id.* ¶ 72.) On December 2, 2021, Dr. Haczynska had an approximately thirty-minute call with a member of the MSHS Human Resources and Labor Relations department inquiring about "her sincerely held religious beliefs." (*Id.* ¶ 77.) At the end of the call, the MSHS representative told Dr. Haczynska that he would write a report of their conversation "and submit it to the Religious Committee at MSHS, which is comprised of John Doe defendants." (*Id.* ¶ 78.) On December 3, 2021, MSHS issued a final denial of Dr. Haczynska's request for a religious exemption to the COVID-19 vaccine, "without considering a reasonable accommodation which would have permitted her to work from home in a manner which would have presented a cost savings to [D]efendants and better security control regarding confidential documents and information." (*Id.* ¶ 79.) MSHS denied Dr. Haczynska's appeal of the decision denying her exemption request, and on December 7, 2021, MSHS formally terminated Dr. Haczynska's employment. (*Id.* ¶¶ 81–82.) Dr. Haczynska alleges that Meseck offered her job "to a younger male replacement in September [of] 2021, months before Dr. Haczynska's termination." (*Id.* ¶ 83.) Following a formal complaint of religious discrimination filed with the U.S. Equal Employment Opportunity Commission (the "EEOC"), Dr. Haczynska was notified of her right to sue on January 26, 2022. (*Id.* ¶¶ 74, 85.)

ii.    **Wielkopolan's employment with MSHS**

Wielkopolan worked as an Administrative Assistant at MSHS.  (*Id.* ¶ 89.)  Her duties and responsibilities did not involve providing direct medical care to patients, and "[a]ll of her duties could have been performed from home without substantial expense to MSHS."  (*Id.* ¶ 89.)  She regularly tested for exposure to COVID-19 and wore all required personal protective equipment while performing her duties at MSHS.  (*Id.* ¶ 88.)  As a devout Roman Catholic, Wielkopolan refuses any vaccine that conflicts with her "sincere moral and religious beliefs."  (*Id.* ¶ 86.)

Wielkopolan submitted a request for a religious exemption from MSHS's COVID-19 vaccination requirement on August 15, 2021.  (*Id.* ¶ 90.)  In her request, she explained that she could not take the COVID-19 vaccine because of its "link to abortion," and that accepting it "would be a desecration of her body as a temple of God."  (*Id.* ¶ 91.)  On October 27, 2021, Wielkopolan received an email from the reviewing committee with further questions, including some regarding "her past and future use of over-the-counter medications."  (*Id.* ¶ 92.)  Wielkopolan objected to the questions as a violation of Title VII.  (*Id.*)

On November 19, 2021, MSHS sent Wielkopolan an email informing her that while her request was still under review, MSHS could no longer have employees without approved exemptions or employees awaiting decisions to work on-site.  (*Id.* ¶ 93.)  She was told that she needed to remain off site starting on November 23, 2021.  (*Id.*)  Her request was eventually denied on December 15, 2021, on the basis that she "did not sufficiently establish a sincerely held religious or moral belief that is contrary to the practice of immunization or the COVID-19 vaccine."  (*Id.* ¶ 94 (emphasis omitted).)  Following two appeals of the decision, Mount Sinai Defendants informed Wielkopolan that the denial was final, and they directed her to remain off site using paid time off or unpaid leave until January 21, 2022, after which MSHS would begin

10

the termination process if Wielkopolan was still not vaccinated.  (*Id.* ¶¶ 96–99.)  She never received a formal termination letter from MSHS.  (*Id.* ¶ 101.)  Wielkopolan alleges that she "was replaced by a younger woman whose skill level was not substantially different . . . but who was paid substantially more money" and that her termination "was based in part on discriminatory animus" based on Wielkopolan's age.  (*Id.* ¶ 104.)  Wielkopolan filed a formal complaint for religious discrimination with the New York State Division of Human Rights and received a letter notifying her of her right to sue from the EEOC on January 31, 2023.  (*Id.* ¶¶ 102–03.)

Although Mount Sinai Defendants denied the religious exemption requests of both Dr. Haczynska and Wielkopolan, MSHS granted the exemption request of Dr. Haczynska's coworker in the VCTL, Joanna Grabowska.  (*Id.* ¶¶ 47, 100, 105.)  Plaintiffs contend that Grabowska submitted with her exemption request the same two letters from religious leaders that Dr. Haczynska relied on in her exemption request.  (*Id.* ¶ 47.)  They allege that Mount Sinai Defendants granted Grabowska a religious exemption from the COVID-19 vaccine although her job "could not be accommodated with at-home work, which could have been provided to [Plaintiffs] without substantial cost or disruption."  (*Id.* ¶¶ 100, 108, 109.)

### b. Procedural background

In the FAC, Plaintiffs brought claims under 42 U.S.C. § 1983 against State Defendants, alleging violations of (1) their rights under the Free Exercise Clause of the First Amendment, (2) the Establishment Clause of the First Amendment, and (3) their rights to procedural due process under the Fourteenth Amendment.  (FAC ¶¶ 167–69, 174–87.)  Plaintiffs also alleged claims against Mount Sinai Defendants for religious discrimination based on failure to accommodate in

violation of Title VII, the NYSHRL, and the NYCHRL.[7]  (*Id.* ¶¶ 139–66.)

Defendants moved to dismiss the FAC on December 21, 2023, and Plaintiffs opposed the motions.  On June 26, 2024, the Court granted the State Defendants' and Mount Sinai Defendants' motions to dismiss the FAC for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Haczynska*, 738 F. Supp. 3d at 307.

On July 12, 2024, Plaintiffs filed a SAC, renewing their claims against Mount Sinai Defendants for religious discrimination based on failure to accommodate in violation of Title VII, the NYSHRL, and the NYCHRL, and adding new claims for sex, age, national origin, and disability discrimination under the NYSHRL and the NYCHRL, and a new claim for common law fraud.[8]  (*Id.* ¶¶ 117–54.)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the Complaint] liberally, accepting all factual allegations

---

[7]  In their Amended Complaint, Plaintiffs also brought section 1983 claims against Mount Sinai Defendants, alleging that they were state actors, but Plaintiffs withdrew those claims against the Mount Sinai Defendants.  (Pls.' Mem. in Opp'n to Mount Sinai Defs.' Mot. to Dismiss Pls.' FAC 21 n.5, Docket Entry No. 46.)  In addition, Plaintiffs brought claims against all Defendants (1) alleging a violation of the Equal Protection Clause of the Fourteenth Amendment and (2) seeking a judgment declaring that the emergency authorization of COVID-19 vaccines and Defendants' resulting vaccine requirements violated Plaintiffs' rights under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, but Plaintiffs withdrew both claims in their entirety.  (*Id.*; Pls.' Mem. in Opp'n to State Defs.' Mot. to Dismiss Pls.' FAC 6 n.3, Docket Entry No. 49.)

[8]  Plaintiffs do "not attempt[] to renew" their claims against the State Defendants or Maksoud, "but reserve their right to appeal" the Court's dismissal of those claims in the June 2024 Decision.  (SAC 2 n.1.)

therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

### b.    Plaintiffs fail to plausibly allege Title VII claims

Mount Sinai Defendants argue that Plaintiffs fail to state plausible claims under Title VII for religious discrimination under a failure-to-accommodate theory.  (Defs.' Mem. 8–15.)  First, Mount Sinai Defendants point to numerous decisions from other courts in the Second Circuit dismissing Title VII claims against healthcare entities' vaccination mandates during the COVID-19 pandemic.  (*Id.* at 8–11.)  Second, they argue that Plaintiffs "could not have worked fully

remotely and any accommodation they could have been offered would have caused Mount Sinai"

to violate Section 2.61.  (*Id.* at 11–13.)  Third, Mount Sinai Defendants contend that Plaintiffs

allege no facts supporting their claims for religious discrimination and that "[t]he sole reason for

their termination was their refusal to be vaccinated as required by [Section 2.61] and not . . . their

religion."  (*Id.* at 14–15.)

Plaintiffs argue that they have stated plausible claims for relief under Title VII for failure

to accommodate.[9]  (Pls.' Opp'n 14–18.)  First, Plaintiffs argue that Defendants denied Plaintiffs'

---

[9]  Although Plaintiffs list two separate counts in their SAC under Title VII — one for "Failure to Accommodate" and one for "Religious Discrimination," (SAC ¶¶ 117–27) — both counts appear to allege religious discrimination based on failure to accommodate, (*id.* ¶ 126 (alleging, under the "Religious Discrimination" count, that Mount Sinai Defendants "fail[ed] and refus[ed] to offer . . . religious accommodation" due to Plaintiffs' religion)).  Because both counts appear to allege failure to accommodate, the Court considers only that theory.

Moreover, Plaintiffs do not allege facts that would support a Title VII claim under a disparate treatment theory of religious discrimination.  *See Claiborne v. Winthrop Univ. Hosp.*, No. 17-CV-6692, 2019 WL 2439430, at *3 (E.D.N.Y. Feb. 13, 2019) (observing that plaintiffs "may claim a violation of religious discrimination under Title VII under theories of either disparate treatment or denial of reasonable accommodation" (quoting *Weber v. City of New York*, 973 F. Supp. 2d 227, 249 (E.D.N.Y. 2013))).  Plaintiffs' allegations that they were terminated after Mount Sinai Defendants "determined that their religious beliefs were not *bona fide*" and therefore not "entitled to an accommodation," (Pls.' Opp'n 19), is insufficient to demonstrate "circumstances giving rise to an inference of discrimination" as required to assert a disparate treatment claim under Title VII.  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (quoting *Tassy v. Buttigeg*, 51 F.4th 521, 529 (2d Cir. 2022)).  In addition, Plaintiffs not only fail to allege facts that they were treated differently from others based on their religion, but they allege that Mount Sinai Defendants granted a religious exemption to Grabowska, a similarly-situated colleague who shares Plaintiffs' religious beliefs.  (SAC ¶ 47.)  Assuming that Grabowska is similarly-situated to Plaintiffs, allegations that a member of a plaintiff's protected class "received favorable treatment would undermine any inference that the [d]efendants were motivated by [discriminatory] animus."  *Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 12-CV-788, 2013 WL 1092907, at *9–10 (D. Conn. Mar. 15, 2013); *see, e.g.*, *Bethea v. JP Morgan Chase & Co.*, No. 15-CV-3544, 2019 WL 4805141, at *8 (E.D.N.Y. Sept. 30, 2019) (explaining that plaintiff's claim is undermined by the fact that a similarly-situated employee replaced plaintiff); *Guzman v. City of New York*, 93 F. Supp. 3d 248, 259 (S.D.N.Y. 2015) (explaining that favorable treatment of a similarly-situated employee "undermines [plaintiff's] race and gender discrimination claims").  Plaintiffs similarly fail to allege that they were "qualified for the position" they sought, *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019), because even as

"accommodations based on the assessment that neither proved the existence of a *bona fide* religious objection to the vaccines," which is "a facially flawed basis for denying the accommodations — particularly when . . . [Grabowska] was given a complete religious exemption as a patient-facing employee based on the identical assertions as [Plaintiffs]."  (*Id.* at 14.)  Second, Plaintiffs argue that they "have identified bases for providing them with reasonable accommodations for their religious objections to the COVID-19 vaccines." [10]  (*Id.* at 14–18.)  Plaintiffs contend that Mount Sinai Defendants "could have accommodated their religious objections by having them work from home."  (*Id.* at 17.)  They argue that Defendants incorrectly assert that it would have been an undue hardship to accommodate Plaintiffs because "[t]he state's regulations must yield to the requirements of Title VII under the Supremacy

---

described in the SAC, receipt of the COVID-19 vaccine was a requirement for their positions while Section 2.61 was in effect, (*see* SAC ¶¶ 51–55).  The Court accordingly declines to address further whether Plaintiffs plausibly state a claim for religious discrimination based on disparate treatment.

   [10]  Plaintiffs argue that Defendants' "reliance on [Section 2.61] as a crutch to avoid their Title VII obligations is specious" following *Bassett*'s ruling that Section 2.61 was "void under New York law since the DOH exceeded its powers when promulgating it."  (Pls.' Opp'n 17 (citing *Med. Profs. for Informed Consent v. Bassett*, 185 N.Y.S.3d 578 (Sup. Ct. 2022)).)  They argue that the Mount Sinai Defendants are bound by the *Bassett* court's decision invalidating Section 2.61 and that any post-*Bassett* cases Mount Sinai Defendants rely on for support that "treat[s] [Section 2.61] as having been legally promulgated are *ultra vires* and should have been vacated."  (*Id.* at 17 & 17 n.2.)  As the Court explained in the June 2024 Decision, the Court is not bound to follow *Bassett*, especially where federal claims are concerned.  *See Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 316, 319 n.14 (E.D.N.Y. 2024).  Moreover, a New York Supreme Court decided *Bassett* nearly two years after Plaintiffs sought religious exemptions from Mount Sinai Defendants, and *Bassett* is therefore irrelevant to whether Mount Sinai Defendants violated Title VII by complying with state law in effect at the time.  During the relevant period, Mount Sinai Defendants were required to comply with Section 2.61, which was governing law.  Accordingly, *Bassett* does not render irrelevant cases that considered the legality of similar actions under Title VII.

Clause."[11]  (*Id.* at 16 (emphasis omitted).)  Plaintiffs note that the Mount Sinai Defendants "recogni[zed] . . . Title VII's supremacy" by granting Grabowska "a complete exemption" to the COVID-19 vaccine mandate.  (*Id.* at 16–17.)

"Title VII . . . requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'"  *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)); *see New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 333 (2d Cir. 2024) ("[U]nder Title VII, 'when an employee has a genuine religious practice that conflicts with a requirement of employment,' the employer typically must offer the employee a 'reasonable accommodation, *unless* doing so would cause the employer to suffer an undue hardship.'" (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002))).  To establish a claim for failure to accommodate, a plaintiff has the initial burden to prove a *prima facie* case of discrimination.  *Doughty v. Dep't of Developmental Servs. STS*, 607 F. App'x 97, 98 (2d Cir. 2015); *see also Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).  The burden then shifts to the defendant to establish that it offered the plaintiff a reasonable accommodation, or that such an accommodation would have been an undue hardship.  *Baker*, 445 F.3d at 546 ("Once a prima facie case is established by the employee, the employer 'must offer [him or her] a reasonable

---

[11]  Plaintiffs incorrectly characterize the law in arguing that Mount Sinai Defendants would not have suffered "undue hardship" in exempting Plaintiffs from Section 2.61.  (Pls.' Opp'n 16.)  Plaintiffs state that *We the Patriots I* concluded that Section 2.61 "had to yield to the commands of Title VII" and thus Section 2.61 would not "create an undue hardship" on Mount Sinai Defendants if they exempted Plaintiffs from the COVID-19 vaccine mandate.  (*Id.*)  *We the Patriots I* explicitly stated that "Title VII does not require covered entities to provide the accommodation that [p]laintiffs prefer — in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated."  17 F.4th at 292.  Plaintiffs' argument that the Second Circuit concluded that the "state's regulations must yield to the requirements of Title VII under the Supremacy Clause," (Pls.' Opp'n 16), is therefore a misstatement of *We the Patriots I*.

16

accommodation, unless doing so would cause the employer to suffer an undue hardship.'" (quoting *Cosme*, 287 F.3d at 158)); *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) ("If the employee is able to make out a *prima facie* case, the burden shifts to the employer to show that it either offered the employee a reasonable accommodation or that doing so would cause an undue burden." (citing *Baker*, 445 F.3d at 546)). To avoid liability, "the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends." *Cosme*, 287 F.3d at 158; *see also We the Patriots I*, 17 F.4th at 292 ("Title VII does not require covered entities to provide the accommodation that [p]laintiffs prefer."); *Baker*, 445 F.3d at 548 ("We do note that employees are not entitled to hold out for the most beneficial accommodation." (citation and internal quotation marks omitted)).

i. **Plaintiffs have sufficiently alleged religious discrimination based on failure to accommodate**

At the pleading stage, a plaintiff bringing Title VII claims does not need to prove discrimination or even allege facts establishing every element of the *prima facie* case required under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but the facts alleged must give "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015) (same); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (same); *Gentile v. Touro Law Ctr.*, No. 21-CV-1345, 2024 WL 1199512, at *3 (E.D.N.Y. Mar. 20, 2024) ("Although the plaintiff need not make out a *prima facie* case at the motion to dismiss stage, the *prima facie* elements nonetheless provide a 'guide-post for the adjudication of a motion to dismiss.'" (quoting *Pustilnik v. Battery Park City Auth.*, No. 18-CV-9446, 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019))). Thus, a plaintiff need only plead facts sufficient to

17

give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which he brings his claims. *Vega*, 801 F.3d at 83–84 (quoting *Littlejohn*, 795 F.3d at 306, 311); *see also Brown v. S. Shore Univ. Hosp.*, --- F. Supp. 3d ---, ---, 2025 WL 71730, at *8 (E.D.N.Y. Jan. 10, 2025) ("In order to plead a Title VII claim for failure to grant a religious accommodation, a plaintiff 'must plausibly allege that (1) [the plaintiff] held a bona fide religious belief conflicting with an employment requirement; (2) [the plaintiff] informed [the] employers of this belief; and (3) [the plaintiff was] disciplined for failure to comply with the conflicting employment requirement.'" (quoting *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023))).

"To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim must plausibly allege that '(1) [he or she] held a bona fide religious belief conflicting with an employment requirement; (2) [he or she] informed [his or her] employers of this belief; and (3) [he or she was] disciplined for failure to comply with the conflicting employment requirement.'" *D'Cunha*, 2023 WL 7986441, at *2 (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)); *see Baker*, 445 F.3d at 546; *Cagle*, 680 F. Supp. 3d at 435; *Weber v. City of New York*, 973 F. Supp. 2d 227, 258 (E.D.N.Y. 2013). To satisfy the first element, the court must inquire "whether the beliefs professed by a claimant are sincerely held and whether they are, in his own scheme of things, religious." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 720 (S.D.N.Y. 2023) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)); *see also Jackson v. N.Y. State Off. of Mental Health — Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at *5 (E.D.N.Y. May 1, 2024) (citing *Gardner-Alfred*, 651 F. Supp. 3d at 720); *Hickey v. State Univ. of N.Y. at Stony Brook Hosp.,* No. 10-CV-1282, 2012 WL 3064170, at *6 (E.D.N.Y. July 27, 2012) (stating the same). The second

element requires the employee to properly "inform[] her employer of this belief."  *Jackson*, 2024 WL 1908533, at *5 (citing *Doughty*, 607 F. App'x at 98); *Glover v. Grimaldi*, No. 23-CV-5019, 2025 WL 919930, at *10 (S.D.N.Y. Mar. 26, 2025) ("As to the second factor, '[a]n employer need have only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'"  (internal quotations omitted) (quoting *Hickey*, 2012 WL 3064170, at *7))); *Weber*, 973 F. Supp. 2d at 259 ("To satisfy the second element, a plaintiff must properly notify the employer of the plaintiff's conflicting religious belief."  (citing *Hickey*, 2012 WL 3064170, at *7)); *Massie v. Ikon Off. Sols., Inc.*, 381 F. Supp. 2d 91, 100 (N.D.N.Y. 2005) (same).  To satisfy the third element, a plaintiff must show that he suffered an adverse employment action for failing to comply with the employment requirement that conflicted with his religious belief.  *See Jackson*, 2024 WL 1908533, at *5–6; *Edwards v. Elmhurst Hosp. Ctr.*, No. 11-CV-4693, 2013 WL 839535, at *4 (E.D.N.Y. Feb. 15, 2013) ("The third prong 'requires some adverse employment action — typically, discipline, demotion, transfer or termination — for refusing to comply with the conflicting employment requirement.'" (citation and alterations adopted)), *report and recommendation adopted*, 2013 WL 828667 (E.D.N.Y. Mar. 6, 2013).

Mount Sinai Defendants do not appear to dispute that Plaintiffs have sufficiently alleged the elements of a *prima facie* case of religious discrimination based on failure to accommodate. First, Plaintiffs have adequately alleged that they both held bona fide religious beliefs that conflicted with MSHS's vaccination requirement.  (SAC ¶¶ 15, 44–46, 86, 91.)  Second, Plaintiffs informed Mount Sinai Defendants of their beliefs.  (*Id.* ¶¶ 44–46, 91–94, 106, 119.) Third, Plaintiffs lost their jobs for failing to comply with the vaccination requirement.  (*Id.* ¶¶ 1, 68–69, 79, 82, 94–99.)  *See, e.g.*, *Algarin v. NYC Health & Hosps. Corp.*, 678 F. Supp. 3d 497,

508–09 (S.D.N.Y. 2023) (concluding plaintiff established a *prima facie* case of religious discrimination for failure to accommodate where plaintiff informed his employer that "as a practicing Christian, his sincerely held religious beliefs prevented him from receiving" the COVID-19 vaccine, and was subsequently "terminated for failure to comply with the mandatory vaccination requirement"), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024); *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219, 2023 WL 2711415, at *5–6 (S.D.N.Y. Mar. 30, 2023) (finding plaintiff established a *prima facie* case for failure to accommodate where she alleged her bona fide religious belief conflicted with the COVID-19 vaccination requirement and was subsequently terminated for failing to receive the COVID-19 vaccine).  Plaintiffs accordingly have plausibly alleged all the elements of a *prima facie* case of religious discrimination.

### ii.   Providing Plaintiffs' requested accommodation would have created an undue hardship for Mount Sinai Defendants

Mount Sinai Defendants argue that "Plaintiffs fail to plead sufficient facts in the [SAC] to allege a failure to accommodate claim."  (Defs.' Mem. 11.)  First, they argue that Plaintiffs qualified as "personnel" under Section 2.61 because they admitted they worked on-site at Mount Sinai and interacted with coworkers.  (*Id.*; Defs.' Reply 4.)  Second, Mount Sinai Defendants contend that Dr. Haczynska's job duties "were required to be done in-person" and that she "does not allege that it would have been feasible for Mount Sinai" to accommodate her working from home by eliminating her "paper reporting" duties in favor of "digital reporting," nor does she allege "what would have been involved in making such a change."  (Defs.' Mem. 12; Defs.' Reply 4–5.)  Third, Mount Sinai Defendants argue that Wielkopolan makes only "conclusory allegation[s]" that "her duties could have been performed from home without substantial expense

to MSHS." (Defs.' Mem. 12 (quoting SAC ¶ 89); Defs.' Reply 4).[12] Finally, they argue that "[i]t is well-established that granting Plaintiffs a religious exemption . . . would [have] cause[d] the [Mount Sinai] Defendants an undue hardship because it would [have] require[d] them to violate" Section 2.61. (*Id.* at 13.)

Plaintiffs argue that they "both [plead] facts supporting that [Mount Sinai Defendants] could have accommodated their religious objections by having them work from home." (Pls.' Opp'n 17.) They note that Dr. Haczynska "alleges that if she had been accommodated by working from home, the all-important security of her work would increase, and costs would decrease." (*Id.*) Wielkopolan similarly alleges that "she could have worked from home, which would have presented a savings" to Mount Sinai. (*Id.* at 18.)

Even if a plaintiff can establish a *prima facie* case, "[a]n employer does not violate Title VII . . . if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'" *D'Cunha*, 2023 WL 7986441, at *2 (quoting *Cosme*, 287 F.3d at 158); *Baker*, 445 F.3d at 546 (observing the same); *Algarin*, 678 F. Supp. 3d at 507 ("If an employer is notified of a sincerely held religious belief, practice or observance, the employer 'must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to

---

[12] Defendants also argue that Wielkopolan could not have performed her job duties fully remotely because "all employees in her department were required to be [on-site]" and "Wielkopolan's duties included meeting in-person with medical students for their orientation and with patients in connection with their requests for medical records." (Defs.' Mem. 12 (citing Decl. of A. Wesley in Supp. of Defs.' Mot. ("Wesley Decl."), Docket Entry No. 63.) At the motion to dismiss stage, a "district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" as well as documents that are "integral to" the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Plaintiffs did not attach the Wesley Declaration as an exhibit to the SAC, incorporate it by reference, or rely "heavily upon its terms and effects, thereby rendering the document integral to the complaint." *Id.* at 111 (internal quotation marks and citation omitted). The Court therefore does not consider the Wesley Declaration in deciding this motion.

suffer an undue hardship." (quoting *Cosme*, 287 F.3d at 158)). The Supreme Court recently

rejected the "more than *de minimis*" standard for the employer's undue hardship showing, first

articulated in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).[13] *See Groff*, 600 U.S.

at 468. In *Groff*, the Supreme Court explained that undue hardship is adequately established

only "when a burden is substantial in the overall context of an employer's business." *Id.*; *see*

*also Brown*, 2025 WL 71730, at *9 ("In determining whether a requested religious

accommodation imposes a substantial burden on an employer in the overall context of its

business, 'courts must . . . take[] into account all relevant factors in the case at hand, including

the particular accommodations at issue and their practical impact in light of the nature, size and

operating cost of an employer.'" (second alteration in original) (quoting *Groff*, 600 U.S. at

470)); *D'Cunha*, 2023 WL 7986441, at *3 (observing this shift in the "undue hardship" standard

after *Groff*). "The defense of undue hardship 'may be raised by a pre-answer motion to dismiss

under Rule 12(b)(6) . . . if the defense appears on the face of the complaint.'" *D'Cunha*, 2023

WL 7986441, at *2 (alteration in original) (quoting *Iowa Pub. Emps.' Ret. Sys. v. MF Glob.,*

---

[13] In *Groff v. DeJoy*, Gerald Groff brought a Title VII suit against his former employer, the United States Postal Service, for failing to accommodate his refusal to work on the Sabbath (*i.e.*, Sundays). 600 U.S. 447, 455–56 (2023). His employer redistributed Groff's Sunday assignments to other employees, but subjected Groff to "progressive discipline," eventually leading to Groff's resignation. *Id.* at 455. The Third Circuit construed *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), as requiring that, in order to show "undue hardship," an employer need only show that accommodating an employee's beliefs would have imposed "more than a de minimis cost" on the employer. *Id*. at 456. In considering that "[e]xempting Groff from Sunday work . . . 'imposed on his coworkers, disrupted the workplace and workflow, and diminished employee morale,'" the Third Circuit concluded that the employer had met its burden to show an "undue hardship." *Id.* (quoting *Groff v. DeJoy*, 35 F.4th 162, 175 (3d Cir. 2022)). The Supreme Court rejected this reading, concluding that "*Hardison* cannot be reduced to that one phrase" referencing a "de minimis" cost, and that the case is more properly explained by its repeated references to "substantial" burdens on the employer's operations. *Id.* at 468. The Supreme Court therefore concluded that "undue hardship" is shown only "when a burden is substantial in the overall context of an employer's business," and vacated and remanded the judgment as to Groff's claims. *Id.* at 468, 473.

22

*Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)); *Brown*, 2025 WL 71730, at *9 ("An employer may raise the defense of an undue hardship in a pre-answer motion to dismiss 'if the defense appears on the fact of the complaint.'" (quoting *D'Cunha*, 2023 WL 7986441, at *2)).

Mount Sinai Defendants have shown that granting Plaintiffs a religious exemption to the COVID-19 vaccination mandate would have caused them to suffer an "undue hardship." They denied Plaintiffs' requests for religious exemptions when state law required healthcare facilities[14] to "continuously require personnel to be fully vaccinated against COVID-19." Section 2.61(c). As discussed above, the mandate permitted medical exemptions only and did not allow for religious exemptions. *See* Section 2.61(d). Accordingly, Mount Sinai Defendants would have had to violate state law to grant Plaintiffs' requested religious exemptions, "thereby suffering an undue hardship." *See D'Cunha*, 2023 WL 7986441, at *3 ("Defendant could not have granted [plaintiff's] religious-exemption request without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship."). District courts in the Second Circuit have routinely dismissed Title VII claims against employers with COVID-19 vaccination mandates on the basis that granting employees' requests for religious exemptions would have created an undue hardship by forcing employers to violate Section 2.61. *Brown*, 2025 WL 71730, at *11 ("Under a long line of opinions in this Circuit, the religious accommodation that [plaintiff] sought — an exemption from the [d]efendants' COVID-19 vaccination requirement while continuing to work in a position where . . . he could 'potentially expose other covered

---

[14]  It is undisputed that Mount Sinai Defendants were required to comply with Section 2.61 because they were a "covered entity." Section 2.61 defines "[c]overed entities" to include "any facility or institution included in the definition of 'hospital' in section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers." Section 2.61(a)(1)(i). Plaintiffs do not dispute that this includes Mount Sinai Defendants.

personnel'" to COVID-19 "would have posed an undue hardship to the [d]efendants by requiring them to violate" Section 2.61 (bracket omitted) (citing Section 2.61)); *Addonizio v. Nuvance Health*, No. 23-CV-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) ("Courts in this Circuit have repeatedly rejected discrimination claims that would require employers to violate Section 2.61 to accommodate a request for religious exemption or accommodation"); *see also, e.g.*, *Booth v. N.Y. Presbyterian Hosp.-Behav. Health Ctr.*, No. 22-CV-10114, 2024 WL 1381310, at *4 (S.D.N.Y. Mar. 29, 2024) (granting defendant's motion to dismiss plaintiff's Title VII religious discrimination claim because approving an "exemption from the vaccine requirement" would "constitute an undue hardship because it would require [defendant] to violate a state law"); *St. Hillaire v. Montefiore Med. Ctr.*, No. 23-CV-4763, 2024 WL 167337, at *4 (S.D.N.Y. Jan. 16, 2024) ("Defendant could not have accommodated [p]laintiff's request because [p]laintiff was a registered nurse" and "[h]ad [d]efendant granted [p]laintiff's request for an exemption, it would have been in direct violation of New York State law, thus suffering an undue hardship"); *Cagle*, 680 F. Supp. 3d at 436 (explaining that "even if [p]laintiff had alleged facts to support that she had a sincerely held religious belief that conflicted with [Section 2.61], her claim would fail because, based on the allegations of the [c]omplaint, [p]laintiff's exemption request would have imposed an undue burden on [d]efendant"); *Algarin*, 678 F. Supp. 3d at 509 ("[E]xempting [p]laintiff from the mandatory vaccination requirements of Section 2.61 would violate the state rule, which would necessarily create an undue hardship on [defendant]."); *Marte v. Montefiore Med. Ctr.*, No. 22-CV-3491, 2022 WL 7059182, at *4 (S.D.N.Y. Oct. 12, 2022) (explaining that plaintiff's request "to remain in her position without being vaccinated" would "qualify as an undue hardship because it required [d]efendant to violate the law").  Like the defendants in these prior cases, Mount Sinai Defendants would have suffered an "undue

hardship" if forced to grant religious exemptions to Plaintiffs because they would have violated state law.

The Second Circuit has explained that "it may be *possible* under [Section 2.61] for an employer to *accommodate* — not *exempt* — employees with religious objections, by employing them in a manner that removes them from [Section 2.61's] definition of 'personnel.'" *See We the Patriots II*, 17 F.4th at 370. Section 2.61 defines "personnel" as any employees or affiliates of a covered entity "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."[15] Section 2.61(a)(2). However, the Second Circuit also cautioned that "Title VII does not obligate an employer to grant an accommodation that would cause 'undue hardship on the conduct of the employer's business.'" *We the Patriots II*, 17 F. 4th at 370 (quoting 42 U.S.C. § 2000e(j)). Plaintiffs allege that "their jobs did not require them to be patient facing or involve direct patient care," (SAC ¶ 109), that they could have been accommodated with a blanket exemption from Section 2.61, (*id.* ¶¶ 106–08, 111), or by "work[ing] from home without substantial expense or disruption, and even potentially at a cost savings and security upgrade," (*id.* ¶¶ 1, 79, 89, 109, 121). It is well-established that a blanket exemption from the COVID-19 vaccine requirement would not have removed plaintiff from Section 2.61's definition of "personnel" and would have forced Mount Sinai Defendants to suffer an "undue hardship" by violating Section 2.61. *See, e.g.*, *Brown*, 2025 WL 71730, at *15 (concluding that a "blanket exemption" to the vaccine

---

[15] There is no dispute that Plaintiffs were "personnel" under Section 2.61, even though neither had a patient-facing role. *See, e.g.*, *Algarin v. NYC Health & Hosps. Corp.*, 678 F. Supp. 3d 497, 509 (S.D.N.Y. 2023) ("Even though [p]laintiff does not work with patients, [p]laintiff qualifies as 'personnel' for purposes of Section 2.61, given that he admittedly worked on site at [healthcare entity] with co-workers.")), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024).

25

requirement would have created an undue hardship for defendants by requiring them to violate Section 2.61); *Booth*, 2024 WL 1381310, at *4 (explaining that a blanket exemption to the vaccine requirement did not remove plaintiff from the meaning of "personnel" under Section 2.61). In addition, although Plaintiffs assert that "they could have worked from home without substantial expense or disruption, and even potentially at a cost savings and security upgrade," (SAC ¶109), and that "reasonable accommodations existed which would have enabled the [P]laintiffs to work from home," (*id.* ¶ 121), Plaintiffs do not allege that they actually *requested* that Mount Sinai Defendants permit them to work remotely, only that Mount Sinai Defendants did not consider and "did not offer Dr. Haczynska and [Wielkopolan] any accommodation that would have allowed them to continue employment," (*id.* ¶¶ 79, 109). District courts in the Second Circuit that have "allowed Title VII failure-to-accommodate claims involving remote-work requests to survive motions to dismiss have consistently noted that the plaintiffs had, in fact, *requested* such an accommodation." *Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 WL 4254550, at *9 (S.D.N.Y. Sept. 19, 2024). *See, e.g.*, *Carrier v. Fairport Baptist Homes Caring Ministries*, No. 23-CV-6007, 2024 WL 5119776, at *4, 8 (W.D.N.Y. Dec. 16, 2024) (denying motion to dismiss Title VII failure to accommodate claim where plaintiff "submitted documentation referring to his having verbally made alternative requests for a religious accommodation that would have allowed him to avoid receiving the [COVID-19] vaccine and continue working remotely and/or without having contact with [defendant's] residents"); *Kueh v. N.Y. & Presbyterian Hosp.*, No. 23-CV-666, 2024 WL 4882172, at *2, *6 (S.D.N.Y. Nov. 25, 2024) (denying motion to dismiss a failure to accommodate claim where plaintiff requested the ability to work remotely); *Jackson v. N.Y. State Off. of Mental Health-Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at *8 & *8

26

n.6 (E.D.N.Y. May 1, 2024) (denying motion to dismiss a failure to accommodate claim where the plaintiff, whose work was "entirely 'computer based,'" actually requested that her employer accommodate her with an "entirely 'remote' work schedule," and she also "incorporated that request into her [c]omplaint and submitted it with her opposition brief," and had already "work[ed] remotely for over one year before [her employer] required [p]laintiff to return to in-person work"); *Grimes v. N.Y. & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *6 n.4 (S.D.N.Y. Feb. 26, 2024) (explaining that defendants would not have suffered an undue hardship by permitting plaintiff to work fully remotely when she "worked *fully remotely*" for fifteen years prior to Section 2.61, while most plaintiffs who have brought similar claims "held *on-site* positions that required frequent or daily contact with others" and thus accommodating their remote work requests constituted an "undue hardship").  Plaintiffs include few facts about their roles, but they were admittedly in-person and required interaction with other covered personnel.  (*See* SAC ¶¶ 93, 112; *see also id.* ¶ 20 ("Dr. Haczynska's job duties and responsibilities were performed in a lab environment" and included "perform[ing] monthly laboratory, facility, and random batch audits to ensure procedures were being performed correctly and to determine whether additional training was needed; and to oversee the training of laboratory personnel in all procedures related to proper documentation, cGMP production and GLP assays").)  Had Mount Sinai Defendants altered Dr. Haczynska's schedule to "lessen interaction with co-workers," (*id.* ¶ 21), it would not have eliminated the possibility of "expos[ing] other covered personnel, patients or residents to" COVID-19."  *See* Section 2.61(a)(2); *see, e.g.*, *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) (finding defendants would suffer

undue hardship from "increased health and safety risk posed to other employees and patients by allowing [p]laintiffs to remain unvaccinated while working at their respective facilities").

Even if Mount Sinai Defendants could have accommodated Plaintiffs by permitting them to work fully remotely, such an accommodation would have been an "undue hardship" on Mount Sinai Defendants in the context of the COVID-19 pandemic because Mount Sinai Defendants would have had to find another employee to perform Plaintiffs' in-person duties, including conducting "monthly laboratory, facility, and random batch audits to ensure procedures were being performed correctly and to determine whether additional training was needed," (SAC ¶ 20), and "oversee[ing] the training of laboratory personnel in all procedures related to proper documentation, cGMP production and GLP assays," (*id.*). *See Brown*, 2025 WL 71730, at *16 ("To the extent that [d]efendants could have accommodated [plaintiff's] alleged religious belief by placing him in a remote position, courts in this Circuit have found that such an accommodation would result in an undue hardship on hospital defendants, especially in the context of the COVID-19 pandemic, because such employers would have to hire another employee to perform an employee's in-person duties."); *Greene v. Northwell Health Inc.*, No. 23-CV-4846, 2024 WL 4287875, at *17 (E.D.N.Y. Sept. 25, 2024) (same).  Employers are not "required to create a position to accommodate an employee's religious beliefs," and a religious accommodation under Title VII "can never involve the elimination of an essential function of a job." *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, No. 22-CV-10643, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023), *report and recommendation adopted*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023); *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). Mount Sinai Defendants could not have accommodated Plaintiffs' religious beliefs without undue hardship and Plaintiffs' conclusory allegations that they could have worked fully remotely

do not persuade the Court otherwise.  The Court therefore grants Mount Sinai Defendants' motion to dismiss Plaintiffs' Title VII claims.  *Greenberg*, 2024 WL 4252550, at *9 ("[C]ourts that have allowed Title VII failure-to-accommodate claims involving remote-work requests to survive motions to dismiss have . . . certainly not determined that baldly asserting that remote work was a theoretical possibility for the plaintiff was sufficient to survive a motion to dismiss."); *Devita v. Mount Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *6 (S.D.N.Y. June 18, 2024) (dismissing Title VII failure to accommodate claim where plaintiff "d[id] not elaborate how she could have performed any of the essential functions of her job" by working remotely, or how defendant "could have accommodated her without assigning others to perform her duties").

        **c.   The Court declines to exercise supplemental jurisdiction over Plaintiffs' NYSHRL, NYCHRL, and common law claims**

     Because the Court dismisses Plaintiffs' Title VII claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' claims for sex, age, national origin, disability, and religious discrimination under the NSYHRL and the NYCHRL and claim for common law fraud.[16]  *Garrasi v. Wells Fargo Bank, N.A.*, 2024 WL 191802, at *2 (2d Cir. Jan. 18, 2024)

---

[16]  The Court also notes that Plaintiffs' additional claims for sex, age, national origin, and disability discrimination under the NYSHRL and NYCHRL and claim for common law fraud are beyond the scope of the leave to amend the Court granted in the June 2024 Decision.  The June 2024 Decision explicitly permitted Plaintiffs to amend their claims to "plead additional facts, if any, to support an allegation that Mount Sinai Defendants could have accommodated Plaintiffs' religious beliefs by 'employing them in a manner that removes them from [Section 2.61's] definition of "personnel."'"  *Haczynska*, 738 F. Supp. 3d at 325.  The Court also added that "[i]f Plaintiffs decide to file a second amended complaint, Plaintiffs may include their state- and city-law claims."  *Id.*  The Court did not grant Plaintiffs leave to add new state or city law claims or to include for the first time common law claims.  Plaintiffs assert that the Court "did not examine Dr. Haczynska's common law claims and directed simply that she amend her Complaint within thirty days," (Pls.' Opp'n 20), but Plaintiffs did not allege common law claims in the FAC, (*see generally* FAC), and the Court explicitly only granted Plaintiffs leave to amend their Title VII religious discrimination claim.  Although the Court declines to exercise supplemental jurisdiction

(upholding a district court's dismissal of state law claim where the court also dismissed plaintiff's

federal claim (citing *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)));

*Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 46 n.1 (2d Cir. 2017) (affirming district

court's decision declining to exercise supplemental jurisdiction over state law claims after

dismissing plaintiffs' federal claims); *All. of Auto. Mfrs., Inc. v. Currey*, 610 F. App'x 10, 14 (2d

Cir. 2015) (holding it was "not improper for the court to decline to exercise its supplemental

jurisdiction" after it properly dismissed the plaintiff's federal claims); *One Commc'ns Corp. v.

J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims

are dismissed, a district court is well within its discretion to decline to assert supplemental

jurisdiction over any state law claims[.]" (citing *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d

46, 52 (2d Cir. 2009))).

> **d.    The Court denies leave to amend the SAC**

Mount Sinai Defendants argue that the Court should dismiss Plaintiffs' claims in its

entirety with prejudice.  (Defs.' Mem. 23; Defs.' Reply 10.)  Plaintiffs do not request leave to

amend the SAC if the Court grants Mount Sinai Defendants' motion to dismiss.

Although "[l]eave to amend should be 'freely give[n] . . . when justice so requires,'"

*United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2015) (second alteration in

original), courts need not grant amendments when they are "futile" and "would fail to cure prior

---

and does not reach these claims, Plaintiffs' additional state, city, and common law claims are
beyond the scope of the leave to amend.  *See Sussman Sales Co. v. VWR Int'l, LLC*, No. 20-
2869, 2025 WL 1004729, at *3 (S.D.N.Y. Apr. 1, 2025) (denying leave to amend where plaintiff
"exceed[ed] the parameters of the leave that was given" (quoting *Palm Beach Strategic Income,
LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012))); *Starostenko v. UBS AG*, No. 19-CV-9993,
2022 WL 1082533, at *2 (S.D.N.Y. Apr. 7, 2022) (striking "certain allegations and claims that
exceed the scope" of the leave to amend); *Kellier v. MMS*, No. 20-CV-10939, 2021 WL
1947775, at *4 (S.D.N.Y. May 13, 2021) (denying plaintiff leave to add claims "because any
such claims would be beyond the scope of the original lawsuit and the permitted amendment").

deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."

*Jang v. Trustees of St. Johnsbury Acad.*, 771 Fed. App'x 86, 88 (2d Cir. 2019) (quoting *Panther*

*Partners Inc. v. Ikanos Commc'n, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).  The Court has already

permitted Plaintiffs to amend their complaint "to plead additional facts, if any, to support an

allegation that Mount Sinai Defendants could have accommodated Plaintiffs' religious beliefs."

*Haczynska*, 738 F. Supp. 3d at 325.  Plaintiffs have failed to allege sufficient facts to support a

claim of failure to accommodate under Title VII and improperly attempted to amend their

complaint beyond the Court's leave to amend.  Construing the SAC liberally, Plaintiffs'

allegations do not suggest that they are merely "inadequately or inartfully pleaded" but rather

that their deficiencies are "substantive."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

The Court therefore declines to permit Plaintiffs to file a third amended complaint.  *See Pastor v.*

*Mercy Med. Ctr.*, No. 22-CV-7847, 2024 WL 3029118, at *6 (E.D.N.Y. June 17, 2024)

(dismissing plaintiff's Title VII failure to accommodate claim where "amendment would be

futile because [p]laintiff cannot cure the . . . legal deficiencies"); *Conde v. Mid Hudson Reg'l*

*Hosp. Med. Ctr.*, No. 22-CV-3085, 2024 WL 168282, at *9 (S.D.N.Y. Jan. 12, 2024) (declining

to permit further amendment where "the problems with plaintiff's causes of action are

substantive, and supplementary and/or improved pleading will not cure the deficiencies" and

amendment of plaintiffs' Title VII failure to accommodate claim "would be futile"); *Moore v.*

*Montefiore Med. Ctr.*, No. 22-CV-10242, 2023 WL 7280476, at *8 (S.D.N.Y. Nov. 3, 2023)

(declining to grant leave to amend because plaintiff's "Title VII discrimination claims will

ultimately fail due to the undue hardship [defendant] would face by granting her exemption

request.").

## III.  Conclusion

For the reasons stated above, the Court (1) dismisses with prejudice Plaintiffs' Title VII

claims for religious discrimination, and (2) dismisses without prejudice Plaintiffs' (i) NYSHRL

and NYCHRL claims for sex, age, national origin, disability, and religious discrimination; and

(ii) common law fraud claim.

Dated: May 13, 2025
          Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge